[Civ. No. 29380. First Dist., Div. Two. Mar. 5, 1971.]

ALDEN CAMPEN et al., Petitioners, v.
FRANCIS L. GREINER, as City Clerk, etc., Respondent;
CITY COUNCIL OF THE CITY OF SAN JOSE et al.,
Real Parties in Interest.

**COUNSEL**

Rankin, Oneal, Center, Luckhardt, Bonney, Marlais, Lund & Hinshaw, Arthur K. Lund, Rea, Frasse, Anastasi, Clark, Lewis & Glennon and Alfred C. Dossa for Petitioners.

Ferdinand P. Palla, City Attorney, Richard K. Karren, Assistant City Attorney, for Respondent and for Real Party in Interest City Council.

Burnett, Burnett, Keough, Cali, Bishop & Baker and John M. Burnett for Real Parties in Interest Rogers, Gann and Donohue.

**OPINION**

**THE COURT.**—Petitioners, electors and taxpayers of the City of San Jose, seek a writ of mandate to compel the City Clerk of the City of San Jose to

remove from the ballot for the city's election, to be held on April 13, 1971, an initiative measure repealing the city's utility tax ordinance.[1]

Petitioners contend that neither the initiative provisions of the California Constitution nor the initiative provisions of the city charter reserve to the electors of the City of San Jose the power to initiate and adopt an ordinance which repeals the utility users' tax, and that electors may not be permitted by initiative to eliminate a source of revenue needed to provide essential governmental services to the inhabitants.

On July 6, 1970, pursuant to section 602, subdivision (c), of the Charter of the City of San Jose, the city council adopted Ordinance No. 15285 imposing a tax on all persons in the city using telephones, gas, water and electricity, the tax to be collected by the utility involved at the rate of 7½ percent of the charges made for utility service billed to a user commencing September 1, 1970. The ordinance provides that after May 1, 1971, the tax rate is to drop to 5 percent of the charges made for such services. The stated purpose of the tax is to provide revenue for the *usual current expenses of the city*.

On August 14, 1970, real parties Hal M. Rogers and Donald E. Gann published in the San Jose Post Record a notice of intention to circulate an initiative petition to repeal the ordinance. On December 7, 1970, the city clerk certified to the city council that the initiative petition had been signed by qualified electors of the City of San Jose in excess of 8 percent of the number of persons eligible to vote in the next municipal election. The new ordinance proposed under the initiative measure would (1) repeal the utility users' tax and (2) prohibit the city council from imposing or collecting a utility users' tax in the future without a vote of the people.

On January 11, 1971, the city council, acting contrary to the legal opinion of the city attorney that the electors did not have the power to initiate and adopt an ordinance which forbids the present and future city councils from taxing the sale of utility services, passed Resolution No. 38859 formally permitting the initiative to be submitted to the voters at the general election to be held on Tuesday, April 13, 1971.

---

[1] Attached to the taxpayers' petition is the declaration of the Director of Finance of the City of San Jose which reveals that the utility use tax revenue estimate of $4,801,000 represents 10.9 percent of the total funds estimated to be available to the general fund for the City of San Jose for the fiscal year 1970-1971; that the city charter limit on a property tax levy for operating purposes is $1.40 per $100 of assessed valuation; that the present property tax levy is $1.323 per $100 of assessed valuation. Taxpayers contend that the loss of almost five million dollars a year in utility tax revenue could be disastrous to the orderly and efficient administration of a major California city in light of the fact that raising the property tax to the maximum permitted by the charter would yield only $745,425.

The sole question before us is whether the power of the initiative or referendum under the Constitution and section 1603 of the freeholders' charter of the city can be exercised to set aside by direct legislation by the people a tax levied by the city council in order to provide revenue for essential governmental services.

California Constitution, article IV, section 1, vests the legislative power of the state in the California Legislature, but "the people reserve to themselves the powers of initiative and referendum."

The "initiative" is defined as "the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them." (Cal. Const., art. IV, § 22.) The "referendum" is defined as the "power of the electors to approve or reject statutes or parts of statutes *except* urgency statutes, statutes calling elections, and statutes *providing for tax levies or appropriations for usual current expenses of the State.*" (Cal. Const., art. IV, § 23; italics added.)

Constitution, article IV, section 25, provides: "Initiative and referendum powers may be exercised by the electors of each city or county under procedure that the Legislature shall provide. This section does not affect a city having a charter."

San Jose is a freeholders' charter city, organized as such under California Constitution, article XI, section 8; now since June 2, 1970, California Constitution, article XI, sections 3 and 5. By virtue thereof, city charters in respect to municipal affairs supersede all laws inconsistent therewith, and in regard to municipal affairs such cities may make and enforce all ordinances and regulations subject only to restrictions and limitations imposed in their several charters. It is competent in such charters to provide for conduct of city elections. Within its scope, such a charter is to a city what the state Constitution is to the state. (*Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997 [84 Cal.Rptr. 615].)

Section 1603 of the San Jose charter reads as follows: "The powers of the initiative, referendum and the recall of elected municipal officers are hereby reserved to the electors of the City. The provisions of the Elections Code of the State of California, as the same now exist or may hereafter be amended, governing the initiative and referendum and the recall of municipal officers in cities shall be applicable insofar as the same are not in conflict with this Charter; provided, however, that the number of signatures which shall be required for the exercise of said reserved powers shall be as follows: . . ."

The municipal power of taxation for municipal purposes is a

municipal affair. (*City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 599 [212 P.2d 894], holding the powers so conferred may not be circumscribed except by Constitution or charter provisions; *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465 [211 P.2d 564].)

■ The adoption of Elections Code procedures relative to initiative and referendum is to facilitate the exercise of the reserved rights, not to define or circumscribe them. (*Dye* v. *Council of the City of Compton* (1947) 80 Cal.App.2d 486 [182 P.2d 623], hg. den. by Supreme Court.)

The proposed initiative ordinance is not a referendum upon the present utilities tax ordinance, neither by definition nor in the time reserved for referendary action under the procedures adopted by the charter.

■ There is no provision in the state Constitution nor the city charter which limits the subject matter of direct legislation. In principle, any legislation competent for the city councilmen to pass as agents of the electorate can be passed by the direct legislation of their principals, the people, under their reserved power. (*In re Pfahler* (1906) 150 Cal. 71 [88 P. 270].) No one questions the power of the City Council of the City of San Jose to repeal the utility tax ordinance. Our Supreme Court, by analogy to article IV, section 1 (now art. IV, § 23), whereby state legislative acts providing for tax levies or appropriations for the usual current expenses of the state were not subject to referendum, announced the same rule as to referendums in a freeholders' charter city. (*Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619 [191 P.2d 426].) Likewise, this has been extended by judicial decision to counties and cities not under freeholders' charter. ■ In San Jose, the charter (Stats. 1965, ch. 76, p. 5122 et seq.) applies the same rule in that section 604 provides that "(c) An ordinance providing for a tax levy or appropriation for the usual current expenses of the City . . ." shall take effect immediately upon adoption, thus precluding the intervention of a referendum. The charter of San Jose provides in section 605 that an ordinance declaring the amount of money necessary to be raised by taxation, or fixing a rate of ad valorem taxation or levying the annual tax on property, takes effect immediately and is not therefore subject to referendum.

No one doubts the power of the city council to repeal a tax ordinance. ■ The argument that what the agents of the electorate, the councilmen, may do, their principals, the electorate, may do, is attractive but specious, in that it overlooks the limitations of both the state Constitution and the plenary organic law, the charter itself.

All taxation is governed by California Constitution, article XIII; and by

article XIII, section 37, with few constitutional exceptions, the Legislature has no power to impose any tax upon a city, its property or its inhabitants, for city or other municipal purposes; but as to general law cities may vest *in the corporate authorities* power to assess and collect taxes for such purposes. Article XIII, section 40, of the California Constitution provides that no municipal indebtedness shall be incurred in any year, in excess of the income and revenue provided for that year, without the vote of the electorate.

The San Jose Charter as a whole directs or empowers the city government to maintain and carry on the functions of government. Unless the state Constitution or the charter imposes limits, the imposition of such duties and the grant of such power of necessity requires that the power to tax to meet the ordinary expenses of doing so is available. To the degree that any tax imposed to perform such duties therein imposed or for which power is given is repealed, such duties and powers granted by the charter likewise are circumscribed; and where this is done by the council, it necessarily must readjust the entire fiscal affairs of the city. If permitted by an initiative measure, there is no such readjustment, and in the course of a fiscal year, this wreaks havoc and confusion. Since contracts under California Constitution, article XIII, section 40, are entered into upon assurance that the revenues provided underwrite them, an impairment of such general revenue may impair illegally the obligation of such contracts.

We are convinced that any repeal of a tax ordinance by an initiative measure directly conflicts with the charter provisions, article XII, pertaining to the fiscal administration of the City of San Jose. The annual budget is adopted as provided in sections 1205 and 1206. This embraces a complete financial plan for operation of the city, which, of course, includes a plan for the sources of income as well as the plan for expenditures. It can be adopted only after a public hearing, following which an ordinance is adopted pursuant to section 1207 appropriating the money to each office and department, which becomes authority for expenditure, and likewise such ordinances become immediately effective, thus negativing the power of referendum.

Thus, the effect of the initiative, if permitted, would be to invalidate or modify the budgetary plan adopted after public hearing, and thus conflict with the charter procedures. The clear intendment of the charter sections 602, 604 and 1219, with the other provisions mentioned, is that the taxing powers are vested exclusively in the council and that any attempt to exercise a repeal of a tax by initiative ordinance is in effect an attempt to invade or limit the exercise of the powers and duties granted or imposed by the charter, and hence in conflict with it, pro tanto. The budgetary financial plan requires a public hearing and impairment of the plan with-

out the hearing by the use of the initiative conflicts. (Cf. *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 140 [277 P. 308].)

Apart from invalidity arising from such conflict, the public policy considerations announced by our Supreme Court in reference to referendum of tax measures are applicable, likewise.

In *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 134 [222 P.2d 225], a unanimous court declared that the people never intended that the initiative or referendum apply where " 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some other governmental power. . . .' " The power to tax for revenue purposes "is probably the most vital and essential attribute of the government. Without such power it cannot function." (*Watchtower B. & T. Soc.* v. *County of L.A.* (1947) 30 Cal.2d 426, 429 [182 P.2d 178].) In at least one case, it is held an initiative which is a backhand "referendum" upon a tax is invalid for that reason. (*Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 243-244 [50 Cal.Rptr. 402].)

Limitations upon the taxing power, or expanding the powers of the people of San Jose under the initiative and referendum in relation to taxation may validly be incorporated in the freeholders' charter of San Jose. (*Hunt* v. *Mayor & Council of Riverside, supra,* 31 Cal.2d 619, 623-624) but the charter powers may not be limited or impaired by an initiative ordinance repealing a tax levied for general purposes. (Cf. *Briare* v. *Matthews* (1927) 202 Cal. 1, 7 [258 P. 939].)

Petitioners further contend that section two of the proposed initiative measure, which would prohibit all future councils from enacting any utility users' tax without a vote of the people, is an attempt to do by initiative what should properly be done by charter amendment.

This is an attempt to limit or restrict the legislative powers of the council and hence, if enacted, would be invalid. (*In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275]; *Thompson* v. *Board of Trustees* (1904) 144 Cal. 281, 283 [77 P. 951].) The council by ordinance could not tie its own hands as to the future, and the initiative carries no greater legislative power than that possessed by the legislative body itself. (Consult also: *McNeil* v. *City of South Pasadena* (1913) 166 Cal. 153, 156 [135 P. 32]; *Mueller* v. *Brown* (1963) 221 Cal.App.2d 319, 324 [34 Cal.Rptr. 474].)

This provision alone renders invalid the proposition proposed to be sub-

mitted to the voters. Its provisions are not severable. (*Alexander* v. *Mitchell* (1953) 119 Cal.App.2d 816, 830 [260 P.2d 261].)

Let the peremptory writ of mandate issue as prayed.

The petition of the real parties in interest Rogers, Gann and Donohue for a hearing by the Supreme Court was denied April 29, 1971.