[L.A. No. 30523. In Bank. Sept. 16, 1976.]

BARRY BAGLEY et al., Plaintiffs and Appellants, v.
CITY OF MANHATTAN BEACH et al., Defendants and Respondents.

**COUNSEL**

Stephen Warren Solomon, Carole Heller Solomon, Brundage, Reich & Pappy and Dennis M. Harley for Plaintiffs and Appellants.

Davis, Cowell & Bowe, Philip Paul Bowe and Richard G. McCracken as Amici Curiae on behalf of Plaintiffs and Appellants.

Carl K. Newton, City Attorney, Burke, Williams & Sorensen and Mark C. Allen, Jr., for Defendants and Respondents.

Thomas M. O'Connor, City Attorney (San Francisco), Milton H. Mares, Deputy City Attorney, C. Samuel Blick, City Attorney (Escondido), Donald H. Maynor, Deputy City Attorney, Paul B. Pressman, City

Attorney (Vista), Barbara A. Platt, Mark C. Allen, Jr., City Attorney (El Segundo), and Paul A. Geihs, City Attorney (Pismo Beach), as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

CLARK, J.—After the City Council of the City of Manhattan Beach refused to place an initiative measure on the ballot, petitioners sought a writ of mandate to compel the council to do so. The trial court denied relief, and petitioners appeal.

The proposed initiative measure provides that unresolved disputes between the city and the recognized firemen's employee organization shall be submitted to arbitration and that the arbitrator's award shall be final and binding. The arbitration requirement applies not only to unresolved disputes pertaining to the interpretation or application of contracts but also to all disputes as to wages, hours, and terms of employment.

Denying the writ, the superior court concluded the proposed measure is invalid because (1) the Legislature placed the power to determine salaries in a general law city in the city council, precluding delegation to an arbitrator and (2) there are no safeguards in the proposed initiative to prevent abuse of the arbitrator's power. ██ We affirm the judgment on the first ground, finding it unnecessary to reach the second.

Government Code section 36506, dealing with general law cities, provides: "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees."

The language in the statute is clear. It requires compensation be fixed by the city council by ordinance or resolution; the language does not permit fixing of compensation by administrative order or by arbitrator's award.

██ When the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization. (*City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403];

*California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436].)

Although standards might be established governing the fixing of compensation and the city council might delegate functions relating to the application of those standards, the ultimate act of applying the standards and of fixing compensation is legislative in character, invoking the discretion of the council. (*City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d 898, 919-921; *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 634, 637 [12 Cal.Rptr. 671, 361 P.2d 247]; *City and County of S.F.* v. *Boyd* (1943) 22 Cal.2d 685, 689-690 [140 P.2d 666]; *Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518, 532 [106 Cal.Rptr. 441]; *Collins* v. *City & Co. of S. F.* (1952) 112 Cal.App.2d 719, 730-731 [247 P.2d 362]; *Spencer* v. *City of Alhambra* (1941) 44 Cal.App.2d 75, 77 [111 P.2d 910].) As such, and because the language of the statute is not merely clear, but redundant (cf. *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 838 [313 P.2d 545]), the city council may not delegate its power and duty to fix compensation.

Examination of the history of other legislation relating to general law city employees confirms that we should apply the plain language of Government Code section 36506 literally. The Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510), which applies to local government employees and deals with public employee organizations and labor relations, seeks to provide "a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500.) Although there is provision for a written memorandum of understanding by employee organizations and *representatives* of a negotiating public agency, the act expressly provides that the memorandum "shall not be binding" but shall be presented to the governing body of the agency or its statutory representative for determination, thus reflecting the legislative decision that the ultimate determinations are to be made by the governing body itself or its statutory representative and not by others. (Gov. Code, § 3505.1; see *City and County of San Francisco* v. *Cooper, supra,* 13 Cal.3d 898, 926-928 [under the Winton Act involving school labor relations, written memorandum of understanding is not binding, the school board retaining ultimate authority].)

Moreover, the Meyers-Milias-Brown Act provides for negotiation and *permits the local agency and the employee organization to agree to mediation but not to fact-finding or binding arbitration.* (Gov. Code,

§§ 3505, 3505.2; *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 614, fn. 4 [116 Cal.Rptr. 507, 526 P.2d 971]; *Alameda County Employees' Assn.* v. *Alameda County, supra,* 30 Cal.App.3d 518, 533-534.) Similarly, Labor Code sections 1960-1963 permit firefighters to form unions and to present grievances but do not authorize arbitration.

Probably no issue in recent years has been presented to the Legislature more frequently than proposed arbitration of public employee salaries, including firemen's. (Assem. Bill Nos. 1781, 1724, 119, 86 (1975-1976 Reg. Sess.); Sen. Bill Nos. 1310, 1294, 275, 4 (1975-1976 Reg. Sess.); Assem. Bill Nos. 3666, 1243, 33 (1973-1974 Reg. Sess.); Sen. Bill No. 32 (1973-1974 Reg. Sess.); Sen. Bill Nos. 1440, 1424 (1972 Reg. Sess.); Sen. Bill No. 333 (1971 Reg. Sess.); Assem. Bill No. 98 (1970 Reg. Sess.); Sen. Bill Nos. 1294, 1293 (1970 Reg. Sess.); Assem. Bill No. 1400 (1969 Reg. Sess.); Assem. Bill No. 1935 (1967 Reg. Sess.); Assem. Bill Nos. 3084, 2500 (1963 Reg. Sess.).) But no such bill has become law.

Petitioner's reliance on *Kugler* v. *Yocum* (1968) 69 Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303], is misplaced. The case involved the sufficiency of standards necessary to a valid delegation of legislative power in the absence of statutes demonstrating an intent that the power be exercised by a specific legislative body. Here legislative intent limiting delegability is clear.

The language of Government Code section 36506, the provisions of the Meyers-Milias-Brown Act, and the Legislature's repeated refusal to enact any law permitting general law cities to fix salaries by arbitration compel the conclusion that the Legislature intends the city council of a general law city to fix compensation, precluding the fixing of compensation by arbitrator.

 It has long been settled that a city ordinance proposed by initiative "must constitute such legislation as the legislative body of such . . . city has the power to enact under the law granting, defining and limiting the powers of such body. [Citations.]" (*Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 140 [277 P. 308].) The city

possessing no power under existing state statute to provide for arbitration of wage rates, such power cannot be created by local initiative.[1]

The judgment is affirmed.

Wright, C. J., McComb, J., Sullivan, J., and Richardson, J., concurred.

MOSK, J.—I dissent. Under the principles enunciated by this court in *Kugler* v. *Yocum* (1968) 69 Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303], the proposed initiative should not be banned, as an improper delegation of power, from consideration by the electorate.

In divining a legislative intent to preclude the local use of arbitration for resolution of labor disputes, the majority appear to employ two theories. First, they seem to conclude that whenever a discretionary power is granted to one body, any infringement on that authority, of whatever extent or effect, is per se an improper delegation of power. (*Ante,* p. 24.) Second, in the majority view, the Legislature has expressly voiced hostility to any arbitration ordinance. The former conclusion is incorrect under relevant case law, the latter as a matter of statutory interpretation.

As for the first rationale, the majority position is contradicted by *Kugler* v. *Yocum, supra,* in which we upheld a proposed ordinance decreeing that the salaries of Alhambra firefighters shall be no less than the average wage of firefighters employed by the City of Los Angeles and those working for Los Angeles County. The majority vainly attempt to distinguish *Kugler* because it involved a chartered city and thus was decided "in the absence of statutes demonstrating an intent that the power be exercised by a specific legislative body." (*Ante,* p. 26.)

On the contrary, at the time of the proposed ordinance in *Kugler,* the Alhambra City Charter provided, in a manner similar to Government Code section 36506, on which the majority rely, that "The [city] council . . . shall have power to organize the fire division and . . . establish the number of its members and the amount of their salaries . . . ." (*Kugler, supra,* 69 Cal.2d at p. 374, fn. 1.) As a charter provision has all the force of state law within a chartered city (*Bruce* v. *Civil Service Board* (1935) 6 Cal.App.2d 633, 636 [45 P.2d 419]), pursuant to the majority's reasoning

[1]Although *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608, approved arbitration procedures adopted by initiative, Vallejo is a chartered city—not a general law city subject to Government Code section 36506.

we could have held simply that the terms of the Alhambra Charter precluded the proposed ordinance. Instead, we proceeded to scrutinize the ordinance in order to ascertain whether it contained safeguards sufficient to insure that the fundamental policy decisions regarding wages would be made by the city council, not by extraneous forces. (*Kugler, supra,* 69 Cal.2d 371, 376.) We declared, "Doctrinaire legal concepts should not be invoked to impede the reasonable exercise of legislative power properly designed to frustrate abuse. Only in the event of a total abdication of that power, through failure either to render basic policy decisions or to assure that they are implemented as made, will this court intrude on legislative enactment because it is an 'unlawful delegation,' and then only to preserve the representative character of the process of reaching legislative decision." (*Id.* at p. 384.)

Yet the majority imperiously label a legislative enactment an unlawful delegation without ascertaining the extent of the delegation or the availability of standards and safeguards to prevent its abuse. This result cannot be justified on the simplistic ground that the Legislature granted the city council power to fix wages. In *Kugler* and in every California case confronting the issue of unlawful delegation, a power has been granted by statute or the Constitution to one body and then delegated some aspect to another entity. Yet unless the delegation removes *all* authority from the group originally directed to exercise that power (see *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403]), courts have analyzed the delegation to determine whether fundamental policy-making power has been maintained by the legislative body originally designated to exercise it. (See, e.g., *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816 [114 Cal.Rptr. 577, 523 P.2d 617]; *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 369 [55 Cal.Rptr. 23, 420 P.2d 735]; *Gaylord* v. *City of Pasadena* (1917) 175 Cal. 433, 437 [166 P. 348].)

In the present case, Government Code section 36506 states only that, "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees." The proposed initiative would not divest the council of that designated power; indeed, the arbitrator's award could be implemented only by a council ordinance. Of course, the initiative would, in many instances, inhibit the council from unilaterally pronouncing decisions regarding wages, as would, for example, any collective bargaining with the firefighters. Because of this potential infringement, we should analyze the initiative in the manner undertaken

by *Kugler*. But it is heroic and unprecedented to conclude that grants of power to one body absolutely preclude any appropriate referral of aspects of that power to another entity. (See *Eastlake* v. *Forest City Enterprises, Inc.* (1976) 426 U.S. 668 [49 L.Ed.2d 132, 96 S.Ct. 2358].)

As for the other point relied upon by the majority—the Legislature expressly intended to prohibit local arbitration ordinances—little persuasive support is offered. Government Code section 36506, as we have seen, does not, by its terms, prohibit arbitration or other reasonable means to resolve labor disputes. The majority can find no legislative history to suggest that the section was intended to be anything other than it facially appears to be: a general grant of power to a local government.

The majority also rely on the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.). It is true that the act does not compel local governments to submit to arbitration, but the majority misreads the statute to conclude that the act prohibits municipalities from arbitrating. The act establishes certain minimum procedures that must be undertaken by public employers and employees. They must meet and confer with each other and bargain in good faith. (Gov. Code, § 3505.) If they reach an agreement, they must prepare a memorandum of agreement (§ 3505.1). The Legislature's directive that the agreement shall not be binding reflects a reluctance to impose arbitration on unwilling municipalities, not a repudiation of local arbitration ordinances voluntarily adopted.

This is made clear in other provisions of the act. Section 3500 provides: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies which provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter." The act thus allows local governments to maintain their own procedures, consistent with the purposes of the act. (*Ball* v. *City Council* (1967) 252 Cal.App.2d 136, 143 [60 Cal.Rptr. 139]; Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 725.) As the act is designed to provide reasonable dispute-solving mechanisms, section 3500 seems to permit such procedures as arbitration.

Also significant are sections 3505 and 3507. The former provides that the bargaining process "should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance . . . ." Section 3507 allows a public agency to adopt "additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment." Taken together, these provisions indicate that the Meyers-Milias-Brown Act expresses no marked hostility, but benign neutrality toward local use of arbitration procedures.

Also lending dubious credence to the majority conclusion is the reference to defeat of various public employment bills in the Legislature. (*Ante,* p. 26.) As we observed recently in *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 418 [128 Cal.Rptr. 183, 546 P.2d 687], "At best, 'Legislative silence is a Delphic divination.'" In these circumstances, even the Oracle of Delphi would have difficulty in finding legislative hostility to local use of arbitration. Of the 22 bills cited by the majority, 14 would have required as a matter of state law public employers and employees to submit to arbitration of wage disputes. Obviously, the defeat of a bill to establish state-imposed arbitration requirements does not signify legislative opposition to voluntary local decisions to adopt arbitration. Six of the bills would have imposed mandatory mediation and fact-finding, while at the same time providing for arbitration of disputes revolving around interpretations of existing agreements, an area entirely different from arbitration of wage disputes. One of the remaining two measures cryptically stated, without further explanation, "Upon failure to reach agreement, the difference may be referred to voluntary arbitration." (Assem. Bill No. 3084 (1963) Reg. Sess.).) Only 1 of the 22 bills was at all relevant to our problem. That measure purported to amend the Meyers-Milias-Brown Act to provide that any arbitration procedures adopted by local agencies would be governed by the Code of Civil Procedure sections regarding arbitration. (Assem. Bill No. 3666 (1973-1974 Reg. Sess.).) The bill, thus, did not propose allowing local governments to use arbitration, but assumed that the power already existed.

In short, from the standpoint of case law and legislative history, the majority have erred in concluding that the Legislature expressly intended to prevent adoption of arbitration to resolve labor disputes.

But the initiative must still be examined to determine whether it constitutes an improper delegation of power. As stated, the keys to this

determination are whether the legislative body retains the fundamental policy-making decision and whether there are sufficient safeguards in the initiative to prevent abuse of authority. (*Kugler* v. *Yocum* (1968) *supra,* 69 Cal.2d 371, 381-382.)

Our analysis in *Kugler* aids us in ascertaining when a delegation of power amounts to an abdication of the legislative policy-making role in labor matters. In approving in that case the proposed ordinance pegging wages of Alhambra firefighters to their counterparts in Los Angeles, we stated, "Once the legislative body has determined the issue of policy, i.e., that the Alhambra wages for firemen should be on a parity with Los Angeles, that body has resolved the 'fundamental issue'; the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation . . . the implementation of the policy by reference to Los Angeles is not the delegation of it." (*Id.* at p. 377.)

Similarly, the initiative in question here does not strip policy-making powers from the legislative body of Manhattan Beach. The proposed ordinance makes a fundamental policy determination, i.e., that impasses in labor disputes involving firefighters shall be resolved not by the present adversary method, with its potential for disruption of essential services, but by a mutual reasoned appeal to an impartial arbitrator. Also, it sets forth detailed procedures concerning the selection of the arbitrator and guidelines governing his decisions. Referring disputes to an arbitrator so selected and directed, like the pegging of wages to those prevalent in Los Angeles in *Kugler,* is not delegating but implementing policy-making.

Further, the proposed ordinance contains safeguards sufficient to prevent abuse of the grant of authority; indeed it appears to be less susceptible to abuse than the proposal approved by this court in *Kugler.*

First, the present initiative, unlike the ordinance in *Kugler,* contemplates reference to an agency beyond the control of the city council only when all else fails. In most circumstances, the firefighters and the city council will continue to reach agreements based on normal collective bargaining. Only when an impasse is reached will there be resort to arbitration. While it may be suggested that the availability of a compulsory arbitration alternative will discourage serious compromising by disputants, it is equally likely that the potential of an adverse binding arbitration award will encourage each side to be conciliatory. In Michigan, where compulsory arbitration is available to resolve police

and firefighter labor disputes, during a 15-month period 224 disputes were settled by the parties and only 105 went to arbitration; of the latter, 17 were settled before final determination by the arbitrator. (McAvoy, *Binding Arbitration of Contract Terms: A New Approach to the Resolution of Disputes in the Public Sector* (1972) 72 Colum.L.Rev. 1192, 1210 (hereinafter cited as McAvoy).)

Another safeguard inherent in the present initiative is the potentiality of court review of an arbitrator's decision. Under Code of Civil Procedure section 1286.2, a court must vacate an arbitration award if, inter alia, the arbitrator exceeds his powers or his award is tainted with corruption, fraud, misconduct, or procedural irregularities. While courts will not usually examine the merits of an arbitration decision (*Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 437 [114 Cal.Rptr. 909]), the prospect of judicial review on the grounds listed in section 1286.2 should deter any untoward tendency of an arbitrator to rule capriciously. Indeed, the Oregon Supreme Court has held that the existence of an appeals procedure in itself may constitute an adequate safeguard against administrative abuse. (*Warren* v. *Marion County* (1960) 222 Ore. 307 [353 P.2d 257, 261-262], cited with approval in *Kugler* at pp. 381-382 of 69 Cal.2d.)

Most significantly, the present initiative purports to afford protection to the municipal fisc. In this regard, the city and amici claim, in a strictly policy argument, that the imposition of arbitration will inevitably lead to exorbitant labor settlements and skyrocketing taxes. Implicit in their contention is a marked antipathy to arbitrators as being biased and irresponsible, particularly in matters affecting city treasuries. No authority in support of such apprehension is offered. On the contrary, this court has recognized arbitration to be a time-honored, respected method of settling labor disputes. In *Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 622 [116 Cal.Rptr. 507, 526 P.2d 971], a case involving a charter amendment providing for arbitration of disputes between firefighters and a city, we declared that "state policy in California 'favors arbitration provisions in collective bargaining agreements and recognizes the important part they play in helping to promote industrial stabilization.' "

Again, a comparison with *Kugler* is appropriate. There we approved the proposed ordinance even though it linked firefighter salaries in Alhambra, population 64,500, with those paid in Los Angeles, where

2,743,500 people lived at the time. (69 Cal.2d at p. 385, Burke, J., dissenting.) While Los Angeles may have had greater tax resources to pay salary increases than Alhambra and a tradition of providing some of the highest salaries in the state, we reasoned that the proposed parity plan contained safeguards because "Los Angeles is no more anxious to pay its firemen exorbitant compensation than is Alhambra." (69 Cal.2d 371, 382.)

The arbitration provisions in the present case contain a number of financial safeguards. In contrast to the *Kugler* initiative, the ordinance here in question sets no floor for salaries. Although the arbitrator will not be directly responsible to the electorate, the city will share an equal role with the employees in selecting him. While the salary level in *Kugler* was to be determined solely by one index—the wages paid by Los Angeles—the Manhattan Beach arbitrator must weigh a number of factors. The initiative requires the arbitrator not only to consider the cost of living and existing salaries and benefits in other communities, but also "the interest and welfare of the public; [and] the availability and sources of funds to defray the cost of any changes in wages, hours and conditions of employment." As one commentator has suggested, in reference to a provision in a Nebraska statute similar to the quoted clauses, "Such a formulation avoids the possibility of an award that would necessitate increased taxes, employee lay-offs or reduced municipal services." (McAvoy, at p. 1200.)

For the foregoing reasons I conclude that the proposed initiative is not an unconstitutional delegation of power. The people of the city should not be denied the right to determine by democratic vote how their city government is to resolve labor disputes.

I would reverse the judgment.

Tobriner, J., concurred.