[Civ. No. 36882. First Dist., Div. One. Apr. 5, 1977.]

SAN FRANCISCO FIRE FIGHTERS, LOCAL 798,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS,
AFL-CIO, Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

[Civ. No. 38479. First Dist., Div. One. Apr. 5, 1977.]

SAN FRANCISCO FIRE FIGHTERS, LOCAL 798,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS,
AFL-CIO, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

COUNSEL

Thomas M. O'Connor, City Attorney, Milton H. Mares and James L. Lazarus, Deputy City Attorneys, for Defendants and Appellants and for Defendants and Respondents.

Davis, Cowell & Bowe, Philip Paul Bowe, Richard G. McCracken, Duane W. Reno and Geoffrey V. White for Plaintiff and Appellant and for Plaintiff and Respondent.

OPINION

ELKINGTON, J.—These two appeals have been consolidated for hearing and determination by this court. There is but a single issue. It concerns the validity, as a binding agreement, of a memorandum of understanding (Memorandum) signed by San Francisco Fire Fighters Local 798, International Association of Fire Fighters, AFL-CIO (Union), and the Mayor, Board of Supervisors and Fire Commission of the City and County of San Francisco (City). The Memorandum provided for arbitration of grievances concerning "terms and conditions of employment," as established by the rules and regulations of the fire department. Among the "terms and conditions of employment" subject to arbitration, at least as contended by the Union, were such matters as the authority of "company commanders," the "right" of fire fighters to strike, disciplinary matters, the degree of "physical fitness" required, and the "conditions" of assignment and transfer of fire fighters.

The City has chosen, by the vote of a majority of its electors, to adopt a charter (Charter) under the provisions of the state's Constitution; the City's ordinances and regulations are subject to the restrictions and limitations of the Charter, which "shall supersede . . . all laws inconsistent therewith." (Cal. Const., art. XI, § 3(a), formerly §§ 7½, 8.)

■ The Charter "represents the supreme law of the City and County of San Francisco, subject, of course, to conflicting provisions in the United States and California Constitutions, and to preemptive state law." (*Harman* v. *City and County of San Francisco*, 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248].) **(2)** "[Charter] cities may make and enforce all ordinances and regulations subject only to restrictions and limitations imposed in their several charters. . . . Within its scope, such a

charter is to a city what the state Constitution is to the state." (*Campen v. Greiner,* 15 Cal.App.3d 836, 840 [93 Cal.Rptr. 525].)

The Charter provides that the City's chief executive shall be a mayor, who is chosen by vote of the electorate. It also provides that the mayor shall appoint a fire commission.

Section 3.540 of the Charter states: "The fire department shall be under the management of [the] fire commission, . . ."

The powers and duties of boards and commissions are set forth in section 3.500 of the Charter as follows: "Each board and commission appointed by the mayor, or otherwise provided by this charter, shall have *powers and duties* as follows: (a) *To prescribe reasonable rules and regulations not inconsistent with this charter for the conduct of its affairs, for the distribution and performance of its business, for the conduct and government of its officers and employees, . . .*" (Italics added.)

California's Legislature has enacted the "Meyers-Milias-Brown Act" (hereafter sometimes the Act) which is codified as Government Code sections 3500-3510, inclusive.

The Act provides, among other things, for meetings between public employee organizations and representatives of the public employer, in order to "confer in good faith regarding wages, hours, and other terms and conditions of employment . . . ." (Gov. Code, § 3505.)

It is then provided: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a *written memorandum of such understanding, which shall not be binding,* and present it to the governing body or its statutory representative for determination." (Gov. Code, § 3505.1; italics added.)

The Act further provides: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the *charters,* ordinances, *and rules of local public agencies which establish and regulate a merit or civil service system . . . .*" (Gov. Code, § 3500; italics added.)

The City's Charter establishes and regulates such a merit or civil service system as is contemplated by Government Code section 3500, for its employees, including its fire fighters.

The City's fire fighters, exercising the right recognized by section 3500 of the Act, had elected to be represented by the Union.

In 1973 the Union and representatives of the City, pursuant to the Act, met and conferred concerning the fire fighters' employment relationship with the City. Following the meeting there was prepared the above-noted Memorandum, according to Government Code section 3505.1.

The Memorandum, among other things, provided:

"*Grievance Procedure*: The grievance procedure presently in effect, and utilized by the Employer and the Union, shall continue in operation for the purpose of settling disputes relating to the terms and conditions of employment in the Department; provided, however, that in the event no settlement is reached concerning any dispute, said dispute shall be subject to the impasse procedure hereinafter provided."

"[*Impasse Procedure*:] a) Pursuant to the grant of authority set forth in paragraph (d) of Section 3507 of the Government Code of the State of California, the parties agree that all unresolved issues between the parties relating to employment conditions, including grievances but excluding disciplinary proceedings, shall upon the request of either party hereto, be submitted to an impartial arbitrator for final and binding determination. Provided that before proceeding to arbitration both parties agree to meet mutually with the Mayor in order to attempt to resolve the impasse. [¶] b) The parties shall attempt to agree upon the impartial arbitrator provided for herein, but in the event they are unable to do so within five (5) days, then the American Arbitration Association shall be requested to nominate five (5) persons, all of whom shall be residents of San Francisco, qualified and experienced as labor arbitrators. If the parties cannot agree upon one (1) of the five (5) persons named to act as arbitrator, they shall strike names from the list alternately until one name remains, and said person shall then become the arbitrator. [¶] c) The decision of the arbitrator on any issue submitted as provided herein shall be final and binding on all parties. Any joint costs of arbitration shall be borne equally by the parties."

The Memorandum, as previously noted, was thereafter approved by the City's mayor, its board of supervisors, and its fire commission. *If they, or any of them, had the required authority* the Memorandum thus became a binding agreement between the Union and the City. (See *Glendale City Employees' Assn., Inc.* v. *City of Glendale,* 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609].)

The issue may accordingly be narrowed to the question whether the City through its mayor, board of supervisors, and fire commission, or any of them, was legally permitted to delegate to an arbitrator, the "rules and regulation" making power entrusted to the fire commission by the Charter.

The City contends that the authority of the fire commission to prescribe its own reasonable rules and regulations is made exclusive by the Charter, and that such power may not be assigned or delegated to another, such as the arbitrator of the case before us.

We have concluded that the City's contention is correct. Our reasons follow.

There is little disagreement over the basic principle with which we are concerned.

The rule is broadly stated in 2 McQuillin, The Law of Municipal Corporations (3d ed. 1966) section 10.39, as follows: "[T]he principle is fundamental and of universal application that public powers conferred upon a municipal corporation and its officers and agents cannot be delegated to others, *unless so authorized by the legislature or charter.* In every case where the law imposes a personal duty upon an officer in relation to a matter of public interest, *he cannot delegate it to others, as by submitting it to arbitration.*" (Fns. omitted; italics added.)

Relying in part on the above-quoted authority of McQuillin, the high court of the state in *California Sch. Employees Assn.* v. *Personnel Commission,* 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436], asserted the same principle in this manner: "As a general rule, powers conferred upon public agencies and officers which involve the exercise of judgment or discretion are in the nature of public trusts and cannot be surrendered or delegated to subordinates *in the absence of statutory authorization.*" (Italics added.)

Under this rule there can be no doubt that the fire commission, *in the absence of some higher authority,* was without power to surrender its "powers and duties" to prescribe rules and regulations to an arbitrator. Its approval of the Memorandum's arbitration provisions, insofar as they dealt with its rules and regulations governing terms and conditions of employment, was obviously without legal effect.

Earlier the same principle was stated by *Chamber of Commerce* v. *Stephens,* 212 Cal. 607, 610 [299 P. 728], as follows: "[L]egislative or discretionary powers or trusts devolved by *charter* or law on a council or governing body, or a specified board or officer, cannot be delegated to others, . . ." (Italics added.)

Adverting to the principle tersely expressed in *California Sch. Employees Assn.* v. *Personnel Commission, supra,* 3 Cal.3d 139, 144, we inquire whether there was "*statutory [or other legal] authorization*" for the delegation of power here at issue. If such an authorization existed it necessarily arose out of the mayor's and board of supervisors' approval of the Memorandum.

But as we have pointed out, the Charter "represents the supreme law" of the City subject only to conflicting constitutional provisions "and to preemptive state law." (*Harman* v. *City and County of San Francisco, supra,* 7 Cal.3d 150, 161.) The acts and rulings, and contracts, of lesser municipal authority are subject to the "restrictions and limitations" imposed by the Charter. (*Campen* v. *Greiner, supra,* 15 Cal.App.3d 836, 840.)

Here the Charter expressly confides the formulation of the fire department's rules and regulations covering terms and conditions of employment to the fire commission. And patently, the City's mayor and board of supervisors whose authority is derived from the Charter may not reasonably, or as a matter of law, have authority to do an act, or make an agreement, in derogation of the Charter.

From what we have said, it follows that neither the City's mayor, nor its board of supervisors, nor its fire commission, had authority to approve the Memorandum's provisions for arbitration of grievances concerning the fire commission's rules and regulations.

We are aided in our conclusion by the recent case of *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22 [132 Cal.Rptr. 668, 553 P.2d 1140] (hereafter *Bagley*).

Manhattan Beach, unlike the *charter* City of San Francisco, is a *general law* city. (See Gov. Code, § 34102.) Its powers generally are derived from legislative enactments found in title 4 of the Government Code (§§ 34000-45345). In *Bagley* certain of the city's electors had presented to the city council for placement on the ballot an initiative

measure providing "that unresolved disputes between the city and the recognized firemen's employee organization shall be submitted to arbitration and that the arbitrator's award shall be final and binding." (P. 24.) The city council refused to process the measure, and its proponents sought a writ of mandate to compel it to do so. Upon an adverse ruling in the superior court Bagley and other proponents appealed. A majority of five concurred in the high court's opinion.

The *Bagley* court majority pointed to the long-settled rule "that a city ordinance proposed by initiative 'must constitute such legislation as the legislative body of such . . . city has the power to enact under the law granting, defining and limiting the powers of such body.' " It then held that: "The city possessing no power under existing state statute to provide for arbitration . . . such power cannot be created by local initiative." (Pp. 26-27.) By a parity of reasoning in the case at bench, the "[C]ity possessing no power under [its Charter] to provide for arbitration" of its fire department's rules and regulations, no subsidiary power to do so resides in its mayor, board of supervisors or fire commission.

We are further of the opinion that our holding is closely attuned with the rationale of *Bagley*'s dissent. The dissenting justices found nothing in the Government Code, or elsewhere, which would prevent the voters of a general law city such as Manhattan Beach, from adopting a voluntary plan for arbitration of labor disputes. Construing the Act, they stated (p. 29): "The Legislature's directive that the agreement shall not be binding reflects a reluctance to impose arbitration on unwilling municipalities, not a repudiation of local arbitration ordinances voluntarily adopted." They then concluded (p. 33) "that the proposed initiative is not an unconstitutional delegation of power. The people of the city should not be denied the right . . . by democratic vote" to resolve disputes between the city and its fire fighters by arbitration. In the case at bench the City's people by democratic vote in the enactment of the Charter, had chosen that such disputes be resolved according to the rules and regulations adopted by its fire commission, and not by arbitration.

The Union has heavily relied upon *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971] in which it insists that the City's instant contention was "flatly rejected." But in that case the *charter* of the City of Vallejo (adopted by vote of its electors) expressly provided for arbitration when the city and its employees were otherwise unable to resolve certain disputes. The court simply gave effect to that charter provision. In the case at bench, as.

indicated, the City's Charter did *not* provide for arbitration of the rules and regulations in dispute, but instead placed the exclusive power and duty to formulate them in the fire commission. *Fire Fighters Union* v. *City of Vallejo, supra,* is wholly inapplicable to the issue before us.

While there seems to be no doubt that the City might have agreed, *by appropriate Charter enactment,* to the Memorandum's arbitration procedure (see *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d 608), neither the Act nor the law generally permits that result by any lesser, or different, method.

The "Judgment on Award" (described as an "order" in the City's notice of appeal) entered January 15, 1975, in the City's superior court action numbered 673085, is reversed.

The "Judgment" entered September 4, 1975, in the City's superior court action numbered 689354, is affirmed.

Sims, Acting P. J., and Lazarus, J.,* concurred.

The petition of San Francisco Fire Fighters for a hearing by the Supreme Court was denied June 2, 1977. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.