OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 89-604 |
| of | : | |
| | : | MAY 3, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| JACK R. WINKLER | : | |
| Assistant Attorney General | : | |
| | : | |

---

THE HONORABLE SAM FARR, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a county board of supervisors levy an additional 0.5 percent sales tax pursuant to Revenue and Taxation Code section 7285 without submitting the proposal to the voters of the county for their approval?

CONCLUSION

The requirement in section 7285 of the Revenue and Taxation Code that county voters must approve the additional 0.5 per cent sales tax is unconstitutional and is not severable from the remainder, making section 7285 void in its entirety. A board of supervisors has no authority to levy an additional 0.5 percent sales tax pursuant to section 7285 with or without the approval of county voters.

ANALYSIS

Revenue and Taxation Code section 7285[1] provides:

"The board of supervisors of any county with a population of 350,000 or less on January 1, 1987, may levy a transactions and use tax [[2]] at a rate of 0.5 percent,

---

[1] All references hereafter to the Revenue and Taxation Code are by section number only.

[2] A transaction and use tax is commonly referred to as a "sales tax." A sales tax is imposed in California at the rate of 6 percent, with 4.75 percent going to the state (§ 6051) and 1.25 percent going to city and county governments (§ 7202). An additional 0.5 percent may be added to finance certain rapid transit systems. (§§ 7251-7265.) Currently an additional 0.25 percent is being added to the tax until January 1, 1991, to fund earthquake disaster relief. (§§ 6051.1, 6201.1.)

<u>if</u> the ordinance or resolution proposing that tax is approved by a two-thirds vote of all members of the board of supervisors and <u>the tax is approved by a majority vote of the qualified voters of the county voting in an election on the issue</u>.  The transactions and use tax shall conform to Part 1.6 (commencing with Section 7251)."  (Emphasis added.)

The question presented is whether a county board of supervisors may levy the additional sales tax under section 7285 without submitting the proposal to the voters of the county as required by the statute.  We conclude that a county board of supervisors has no authority to levy such an additional tax.

Section 24 of article XIII of the Constitution provides:  "The Legislature may not impose taxes for local purposes but may authorize local governments to impose them."  The Legislature has specifically authorized counties to levy such taxes as sales and use taxes (§ 7201), transient occupancy taxes (§ 7280), and taxes upon instruments transferring real property (§ 11911).[3]

Section 7285 was recently enacted (Stats. 1987, ch. 1257) to allow additional 0.5 percent to be added to the sales tax in the less populated counties.[4]  The Legislature has authorized the additional tax on condition that the board of supervisors approve the levy by a two-thirds vote and the voters of the county approve the levy by a majority vote.  The Legislature has exceedingly broad powers in enacting statutes, including the conditioning of a grant of authority in the furtherance of some perceived public policy.  As routinely stated, the Legislature may "exercise all legislative powers which are not expressly or by necessary implication denied to it by the Constitution."  (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691.)  Hence, we must look to the Constitution to determine whether the Legislature is prohibited from including a voter approval requirement in section 7285.

Article IV, section 1 of the California Constitution reserves the legislative powers of initiative and referendum to the people.  Article II, section 9(a) states that "[t]he referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State."  Article II, section 11 provides that referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide.

---

For our purposes, we need not distinguish between a "sales tax," a "use tax," and a "transactions tax," whether levied by the state, a county, a city, or some other governmental entity.  (See §§ 6003-6004, 6051, 6201, 7202-7203, 7253.)  The collection of these related taxes is under the uniform administration of the State Board of Equalization.  (See §§ 7051-7058, 7202, 7204, 7212, 7271-7273.)

[3]We note that the addition of article XIIIA to the Constitution in 1978 caused a substantial reduction in the amount of property tax revenues available to cities, counties, and other local governmental entities.  As a consequence, the Legislature has encouraged local governments to seek alternative sources of funding for necessary services, including the imposition of other types of taxes.  (See Gov. Code, § 16270; *Martin Hospital Dist.* v. *Rothman* (1983) 139 Cal.App.3d 495, 499.)

[4]We are informed that 43 of California's 58 counties had a population of 350,000 or less on January 1, 1987.

The Constitution, however, prohibits referendums of certain types of legislation, including statutes and ordinances "providing for tax levies or appropriations for usual current expenses." (Cal. Const., art. II, § 9, subd. (a).)[5] In *Geiger* v. *Board of Supervisors*, (1957) 48 Cal.2d 832, the Supreme Court rejected the argument that the Legislature had the authority under section 11 of article II to allow county voters to approve or reject county tax ordinances. The court explained:

"The constitutional provisions which reserve the referendum powers to the people expressly except 'tax levies or appropriations for the usual current expenses of the State.' It is apparent that the same exception applies to the referendum powers reserved to the county electors, and, therefore, the Constitution, standing alone, does not secure to county electors the right of referendum over tax levies or appropriations for the usual current expenses of county government. (Cf. *Hunt* v. *Mayor & Council of Riverside*, 31 Cal.2d 619, 623-624.) The next question is whether the Constitution prohibits the Legislature from granting to county electors the power of referendum over tax measures. It is not disputed that the revenue from the tax in question is to be used for the usual current expenses of the county, and it follows that the ordinance is not subject to referendum unless the Legislature has authority to expand and extend the referendum powers reserved by section 1 of article IV of the Constitution and unless it has exercised that authority.

"The listing of exceptions in the Constitution amounts to a declaration of policy against subjecting legislation concerning the excepted matters to a vote of the people. While section 1 of article IV does not expressly prohibit the Legislature from extending the right of referendum to include a county sales tax ordinance, any holding that such measures are subject to referendum would be contrary to this policy and against the clear implication of the constitutional provision. Section 1 is expressly made self-executing, and, in addition, the Legislature is empowered to enact legislation to facilitate its operation. It is obvious, however, that the authorization to adopt procedural regulations does not include the power to enact substantive measures which would extend the scope of the basic referendum right. There is no provision authorizing substantive changes, and we have concluded that it was not intended that the Legislature should have the power to extend or expand the scope of referendum." (*Id*., at pp. 836-837, fn. omitted.)[6]

*Geiger* thus interprets the Constitution as prohibiting a statutory authorization for voters to approve local tax ordinances. (See *Fenton* v. *City of Delano* (1984) 162 Cal.App.3d 400, 405-407; *Community Health Assn.* v. *Board of Supervisors*, *supra*, 146 Cal.App.3d 990, 993-996; *Ortiz* v.

---

[5]It has never been decided whether the constitutional phrase "for usual current expenses" modifies "tax levies" as well as "appropriations." (See *Geiger* v. *Board of Supervisors*, *supra*, 48 Cal.2d 832, 836.) Conceivably, a tax levy to pay for the cost of a capital improvement may be the subject of a referendum. We need not resolve this issue here, since we will conclude that a section 7285 tax levy must be "for usual current expenses."

[6]The constitutional provisions at issue were formerly contained in section 1 of article IV of the Constitution.

*Board of Supervisors, supra*, 107 Cal.App.3d 866, 871; *Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 841; *Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864, 867.)[7]

*Geiger* dealt specifically with authorizing the exercise of the referendum power following the usual procedure of filing a petition by the people requesting an election with respect to an already adopted legislative act.  If a petition has sufficient signatures and meets certain other criteria, an election is held pursuant to this constitutional and statutory procedure.  (See Cal. Const., art. II, § 9; Elec. Code, §§ 4050-4061; *Chase* v. *Brooks* (1986) 187 Cal.App.3d 657, 663; *Referendum Committee* v. *City of Hermosa Beach, supra*, 184 Cal.App.3d 152, 160.)

Section 7285, on the other hand, sets forth a different mechanism for exercising the referendum power.  Instead of allowing a petition to be filed after a particular legislative act has been adopted, it <u>requires</u> a referendum with respect to all future tax levies as described therein.  (See *City of Westminster* v. *County of Orange, supra*, 204 Cal.App.3d 623, 627; *Referendum Committee* v. *City of Hermosa Beach, supra*, 184 Cal.App.3d 152, 157; *Lee* v. *City of Monterey Park* (1985) 173 Cal.App.3d 798, 811-812; Goetz, <u>Direct Democracy in Land Use Planning</u> (1987) 19 Pacific L.J. 793, 800-804; Lowe, <u>Public Safety Legislation and the Referendum Power: A Reexamination</u> (1986) 37 Hastings L.J. 591, 592; Note, <u>The Proper Use of Referendum in Rezoning</u> (1977) 29 Stan.L.Rev. 819, 823; Comment, <u>The Initiative and Referendum's Use in Zoning</u> (1976) 64 Cal.L.Rev. 74, 98).

This difference in procedure does not affect the applicability of the constitutional limitations placed upon referendums.  A referendum may not be held with respect to a tax levy whether it follows the filing of a petition or is the result of a prior legislative act requiring all such levies to be voted upon by the people.  (See *City of Westminster* v. *County of Orange, supra*, 204 Cal.App.3d 623, 628; *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466, 470; *Gibbs* v. *City of Napa* (1976) 59 Cal.App.3d 148, 153; *Campen* v. *Greiner, supra*, 15 Cal.App.3d 836, 843; *Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 243; see also *Eastlake* v. *Forest City Enterprises, Inc.* (1976) 426 U.S. 668 [49 L.Ed. 2d 132, 96 S.Ct. 2358].)  Accordingly, we believe that section 7285 is unconstitutional under article II, sections 9 and 11.

It should also be observed that the Legislature has not expressly restricted the purposes for which a section 7285 tax may be levied.  If the statute authorizes a majority vote for a "special tax,"[8] it would violate article XIIIA of the Constitution.  This constitutional provision requires "a two-thirds vote of the qualified electors" for the imposition of a special tax.

We construe section 7285 as a general tax measure authorization.  The legislative history of section 7285 indicates that a tax levy for only general revenue purposes was contemplated by the Legislature at the time of the statute's enactment.  The report of the Senate Rules Committee concerning the proposed legislation stated with respect to the majority vote requirement:

---

[7]A city charter provision may require voter approval of a tax levy by a charter city.  (See *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 622-623; *City of Westminster* v. *County of Orange* (1988) 204 Cal.App.3d 623, 631; *Campen* v. *Greiner, supra*, 15 Cal.App.3d 836, 843.)

[8]"Special taxes" are imposed for a specific purpose, while "general taxes" are levied for general governmental purposes.  (Gov. Code, §§ 50076, 53721; *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 57; *California Bldg. Industry Assn.* v. *Governing Bd.* (1988) 206 Cal.App.3d 212, 235; *Fenton* v. *City of Delano, supra*, 162 Cal.App.3d 400, 408.)

"In November, 1986, voters approved an initiative statute requiring any general tax increase be submitted to the voters by a two-thirds vote of the governing body and approved by a majority vote of the people. This bill is consistent with this initiative statute."[9]

The report's reference to a 1986 initiative measure was to Proposition 62 which added sections 53720-53730 to the Government Code. These statutes not only define special and general taxes, but require a two-thirds approval vote for the former and a majority approval vote for the latter. Since the Legislature intended the section 7285 tax levy to be consistent with these initiative provisions, section 7285 should be construed as authorizing only a general tax measure.[10] "Where a statute is theoretically capable of more than one construction, we choose that which most comports with the intent of the Legislature." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; see also *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)[11] We conclude that section 7285 authorizes a general tax and not a special tax subject to article XIII A.

We next consider whether the invalid portion of section 7285 may be severed from the remainder so as to authorize the levy of the tax without voter approval. The rules for severability were recently stated in *California Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 821:

"Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . Such clause plus the ability to mechanically sever the invalid part while normally allowing severability, does not conclusively dictate it. The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . or constitutes a completely operative expression of the legislative intent . . . [and is not] so connected with the rest of the statute as to be inseparable. [Citations.]"

Section 26 is a general severability clause applicable to all provisions of the Revenue and Taxation Code. It provides: "If any provision of this code, or its application to any person or circumstance, is held invalid, the remainder of the code, or the application of the provision to other persons or circumstances, is not affected." Because the voter approval requirement is "mechanically serverable" (by deleting the words "and the tax is approved by a majority vote of the qualified voters of the county in an election on the issue") a court would normally sever the invalid voter approval requirement leaving the remainder of section 7285 operative without the voter approval requirement. This would mean that the 0.5 percent transaction and use tax could be adopted by a vote two-thirds

---

[9]"[R]eports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.)

[10]As a general tax measure, section 7285 authorizes a "tax lev[y] . . . for usual current expenses . . . ." (Cal. Const., art. II, § 9, subd. (a); see *Hunt* v. *Mayor & Council of Riverside, supra,* 31 Cal.2d 619, 623; 28 Ops.Cal.Atty.Gen. 351, 353 (1956).)

[11]The constitutionality of Government Code sections 53720-53730 is beyond the scope of this opinion. (See *City of Westminster* v. *County of Orange, supra,* 204 Cal.App.3d 623 [invalidating the Proposition 62 requirement for voter approval of a local general tax imposed between August 1, 1985, and November 5, 1988].)

of all members of the board of supervisors and implemented without approval by the voters. However, as the *California Ins. Co.* case stresses the severability clause saves the unsevered part of the statute only if the court determines that the unsevered remainder of the statute "is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute." We examine that question next.

Section 7485 was added by section 2 of Chapter 1257, Statutes of 1987. Section 4 of that chapter states: "The Legislature finds and declares that this act complies with, and is intended to implement, the provisions of Article 3.7 (commencing with Section 53720) of Chapter 4 of Part 1 of Division 2 of Title 5 of the Government Code, as added by Proposition 62 at the November 4, 1986 general election." Since the Legislature's expressed intent in enacting section 7485 was to implement Government Code sections 53720 - 53730 as enacted by voter approval of Proposition 62 we look to those sections to determine their purpose. Government Code section 53723 provides:

> "No local government, or district, whether or not authorized to levy a property tax, may impose any general tax unless and until such general tax is submitted to the electorate of the local government, or district and approved by a majority vote of the voters voting in an election on the issue."

Thus the purpose of the voter approval requirement in section 7285 was to implement Government Code section 53723. In view of the Legislature's expressly declared intent we believe that the Legislature would not have enacted section 7285 without the voter approval requirement. This is consistent with the view of the court in *City of Westminster* v. *County of Orange* (1988) 204 Cal. App. 3d 623, 633 that "the major thrust of Proposition 62, at least as it was presented to the voters, was the fatally defective attempt to shift control of local taxation to the local electorate." (That case held that Government Code section 53727 was unconstitutional.) We therefore conclude that a court would not hold that the voter approval requirement may be severed leaving the rest of section 7285 stand but instead would hold the entire section unconstitutional.

It is our conclusion that a board of supervisors has no authority to levy a 0.5 percent transactions and use tax pursuant to Revenue and Taxation Code section 7285 with or without approval of county voters. Should a board of supervisors adopt and levy the 0.5 per cent added tax pursuant to section 7285 before the courts have decided the issue, the validity of the added tax will remain subject to a judicial determination that section 7285 is unconstitutional. In view of the questionable constitutionality of section 7285 (in our view) a board of supervisors would be well advised to anticipate the possible consequences of a judicial challenge to the added tax. Of course if the court determined that section 7285 is constitutional, or that the voter approval requirement is unconstitutional but severable from the rest of section 7285, the court would no doubt uphold the validity of the added tax. But if the court determined that section 7285 is void in its entirety (as we believe) the court would not only prohibit future levies of the added tax but could also order the added taxes already collected under section 7285 refunded to the taxpayers. (See *Mills* v. *County of Trinity* (1979) 98 Cal.App.3d 859.)

\* \* \* \* \*