[No. A085349. First Dist., Div. Four. Apr. 18, 2000.]

INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, LOCAL 21, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

COUNSEL

Davis & Reno, Charles E. Tillage and Duane W. Reno for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Jonathan V. Holtzman, Chief Deputy City Attorney, Ellen Forman and Molly S. Stump, Deputy City Attorneys; Carroll, Burdick & McDonough, Ronald Yank, Christopher D. Burdick and Philip A. Ginsburg for Defendants and Respondents.

OPINION

**POCHÉ, J.**—The Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3510,[1] hereinafter MMBA) imposes some structure to labor relations between employees and public agencies while allowing a considerable degree of local regulation. But where the MMBA sets a standard, local divergence is not allowed. This appeal involves such a divergence. Section 3507.3 establishes a specific mechanism for resolving disputes involving the assignment of "professional employees" to a bargaining unit; in such cases the dispute is to be submitted to a designated state agency. Here, a local ordinance was interpreted to assign that function to an administrative law judge for a binding decision. We agree with the trial court that the procedure followed was jurisdictionally improper, which required that the administrative decision be vacated.

## BACKGROUND

This judgment culminates an almost decade-long struggle that generated a maze of extensive administrative and legal proceedings. Not all of the history needs to be narrated at this time. The following abbreviated summary is sufficient.

In late 1991 the Employment Relations Director for the City and County of San Francisco (City) assigned to a new "Management Bargaining Unit" a number of municipal employees who previously had not been represented by an employee organization. Both the San Francisco Municipal Executives Association (MEA) and Local 21 of the International Federation of Professional and Technical Engineers (Local 21) wanted to be the representative for the new unit. A majority of the employees voted for MEA as their representative.

---

[1] Statutory references are to this code unless otherwise indicated.

The crux of the dispute as it developed thereafter was the manner in which classes of employees were assigned to this new bargaining unit (which was subsequently renamed the "Executive Management Unit"). This issue occupied a number of proceedings initiated by Local 21 and held before an administrative law judge (ALJ). The administrative proceeding that concerns us here is the one held between November 1995 and July 1996, which resulted in the decision filed in October of 1996. The City and Local 21 agreed that "rather than submit the entire list of more than 60 protested classifications to an administrative law judge at a single hearing, 10 classifications would be selected from that list as test cases. The parties believed a decision on those 10 classifications would provide guidance for a settlement of Local 21's pending protests over the rest of the proposed classifications."[2] The ALJ upheld half of the 10 protests, determining that employees in specified classes "have the right . . . to be represented as professionals in a professional classification by a professional union" and thus could not be included in the management unit.[3]

MEA, which was not a party to the administrative proceeding, commenced legal proceedings against the City and Local 21 with a complaint seeking various forms of relief to overturn the ALJ decision and prevent employees from leaving "its bargaining unit." Local 21 filed a petition for a writ of mandamus compelling the City to comply with and implement the ALJ's decision. Like MEA, the City filed a complaint against Local 21 for mandamus to vacate the decision of the ALJ and leave intact all of the City's original assignments. The City alleged that the decision of the ALJ (who, together with the office of administrative hearings, was named a party) was

---

[2]The dispute was brought before an ALJ pursuant to section 16.210(b) of the San Francisco Administrative Code, which provides: "In the event an employee or employee organization disagrees with his or her or its inclusion in a particular [representation] unit . . . the aggrieved party may submit a protest to an administrative law judge for a hearing and final determination. In arriving at said determination, said judge shall consider, in addition to any other factors, the similarity of skills, wages, hours and other working conditions among the employees involved, the history of collective bargaining with regard to the employees involved and the desires of said employees." We grant Local 21's request and take judicial notice of the Employee Relations Ordinance (ERO), comprising sections 16.200-16.222 of the San Francisco Administrative Code. Section 16.208 of the ERO gives the City's employment relations director the duty and power to "specify the employees who are to be designated as management . . . ."

[3]This conclusion applied to employees in the classes of chief accountant, assistant director of clinical services I, assistant director of clinical services II, rehabilitation coordinator, and principal engineer. The ALJ also determined that persons in the physician assistant class "ha[ve] the right to be represented by . . . Local 21, if the employees in that classification so desire." The ALJ upheld the classifications of training coordinator, director of patient accounts, hospital administrative assistant, and chief, bureau of health education to the Executive Management Unit.

defective for a number of reasons, including that the ALJ had acted in excess of jurisdiction by adjudicating "a dispute regarding the appropriateness of a unit of representation," a matter where section 3507.3 was the sole means of review.[4] All of these actions were consolidated.

The City and Local 21 reached a tentative settlement of their differences. A flurry of motions resulted. Local 21 moved for an order "declaring the validity" of the settlement, dismissal of the actions, or a peremptory writ of mandate. MEA and the City likewise moved for a peremptory writ of mandate, as well as varying forms of equitable relief. The parties stipulated in effect that the motions involved only issues of law that did not require an administrative record.[5]

The trial court denied the motion of Local 21 and granted that of the City "for the following reasons:

"1. Government Code section 3507.3 is the exclusive remedy for disputes over the unit assignment of professionals.

"2. [The ALJ] exceeded her jurisdiction in the following ways: by ordering classes to be assigned to a particular unit; by ordering classes to be assigned to a particular union; by ordering the City to develop a definition of middle management; and by ordering the City to review the assignments of classes not before her [the ALJ].

"3. [The ALJ] erred as a matter of law when she concluded that professional classes, even when managerial, have the right to choose to be represented by a union that represents rank and file professionals. Managerial status constitutes an appropriate community of interest."[6]

In due course a judgment was entered from which Local 21 perfected this timely appeal.

---

[4]Although MEA did not have this argument in its complaint, it effectively incorporated the point by admitting the allegations of the City's complaint concerning section 3507.3 and the ALJ's jurisdiction, by pleading the same argument as an affirmative defense, and by thereafter presenting it as one of the asserted grounds for relief.

[5]The operative part of the written stipulation was as follows: "The parties . . . stipulate and agree that the issues to be decided in these motions shall be all issues involving the validity of the [ALJ's] decision which do not require a review of the administrative record and a determination by the Court of whether the administrative law judge's findings are supported by the evidence. In the event the Court rejects the contentions of the City and MEA that the administrative law judge proceeded in excess of her jurisdiction and/or that the decision is not supported by the findings, the City and MEA reserve their rights to challenge the decision in subsequent proceedings on the basis that the findings are not supported by the evidence."

[6]Neither the order nor the ensuing judgment mentions a ruling on MEA's motion, an omission we brought to the parties' attention. They submitted a joint written stipulation that the order and the judgment are "to be treated as having denied" MEA's motion as moot in light of the decision to grant the City's motion for the same relief. Perceiving no reason why

REVIEW

The MMBA has two stated purposes. One is "to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by such organizations in their employment relationships with public agencies." (§ 3500.) Public employees are given "the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." (§ 3502.) Public employees may select an "employee organization" to represent them "in their employment relations with public agencies" (§ 3503) and may negotiate an "agency shop agreement" with public agencies. (§ 3502.5.) Public employees are also given the right not to join an employee organization if they prefer to represent themselves individually. (§ 3502.)

The second purpose of the MMBA is "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500.) The scope of representation of public employees by an employee organization extends to these issues. (§ 3504.) Employee organizations must be given written notice of action "directly relating to matters within the scope of representation" (§ 3504.5) and must "meet and confer in good faith" regarding matters within the scope of representation. (§ 3505.) If agreement is reached, it must be reduced to a "memorandum of such understanding." (§ 3505.1.)

The MMBA was not intended to occupy the field and preempt local regulation. "Nothing contained herein shall be deemed to supersede the . . . rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations" (§ 3500). Looking to the future, the MMBA authorizes public agencies to adopt "reasonable rules and regulations" on specified subjects after meeting and conferring with employee organizations. (§ 3507.) One of those subjects is "additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment" (*id.*, subd. (e)).

the stipulation is improper, we accept it. (*T & O Mobile Homes, Inc. v. United California Bank* (1985) 40 Cal.3d 441, 451, fn. 11 [220 Cal.Rptr. 627, 709 P.2d 430]; 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 302, p. 372.)

■ The MMBA deals with a matter of statewide concern, and its standards may not be undercut by contradictory rules or procedures that would frustrate its purposes. (E.g., *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781 [35 Cal.Rptr.2d 814, 884 P.2d 645]; *International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 197-198 [193 Cal.Rptr. 518, 666 P.2d 960]; *San Bernardino County Sheriff's etc. Assn. v. Board of Supervisors* (1992) 7 Cal.App.4th 602, 613 [8 Cal.Rptr.2d 658].) Local regulation is permitted only if "consistent with the purposes of the MMBA." (*Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 63 [151 Cal.Rptr. 547, 588 P.2d 249].)

The essential predicate for effective operation of the MMBA is the unit into which public employees are organized and represented by an employee organization. (See Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719, 738.) There is only one express statutory qualification: the unit must be "appropriate." (§§ 3507, subd. (d), 3507.1.)[7] The first attempt at assaying the criteria for determining whether a unit is "appropriate" was made by this court in 1973 when a group of assistant public defenders objected to their assignment to a bargaining unit composed of all non-health-related professionals. Analogizing from federal precedent under the National Labor Relations Act (29 U.S.C. § 151 et seq.), we recognized that unit determinations made by public agencies would not be overturned if they were "reasonable." With respect to the standard for determining reasonableness, we adopted the "community of interest" test and applied it to a group of professional employees. Taking account of such factors as the " 'distinct nature of their function, their separate supervision and work place, the lack of substantial interchange with other professional employees, and the fact that they are separately hired,' " we held that the attorneys were "sui generis" and therefore entitled to form a separate bargaining unit. (*Alameda County Assistant Public Defenders Assn. v. County of Alameda* (1973) 33 Cal.App.3d 825, 830-832 [109 Cal.Rptr. 392], quoting *Douglas Aircraft Co.* (1966) 157 NLRB 68; see 29 U.S.C. § 159(b).) Our approach has subsequently been adopted by other courts. (See *Reinbold v. City of Santa Monica* (1976) 63 Cal.App.3d 433, 440 [133 Cal.Rptr. 874] and decisions cited.)

■ The MMBA clearly vested the City with the authority to create a management unit and to designate which employees would be deemed

---

[7]There is, however, one specific instance where the MMBA speaks more precisely: section 3508 authorizes local rules providing for separate units for peace officers and for peace officers "to join or participate in employee organizations which are composed solely of those peace officers . . . and which are not subordinate to any other organization."

managerial. (§§ 3507, 3507.5; see *Service Employees Internat. Union v. City of Santa Barbara* (1981) 125 Cal.App.3d 459, 468-469 [178 Cal.Rptr. 89].) The abstract validity of the unit was recognized by the ALJ and the trial court. We have no occasion to disagree with that conclusion. A management unit clearly survives the test of reasonableness. The difficulty is with the composition of the unit.

There appears to be no categorical objection to the inclusion within the management unit of managerial or supervisory employees who also happen to be professionals. (E.g., *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 537-538 [28 Cal.Rptr.2d 617, 869 P.2d 1142] and authorities cited.) But the issue of reasonableness comes into sharper focus when managers who are also "professional employees" are assigned to the management unit not as individuals, but as the collective group of all who hold a particular classification.

The subject of professional employees of public agencies is covered by section 3507.3 of the MMBA. The statute has three sentences. The third defines "[p]rofessional employees" as "employees engaged in work requiring specialized knowledge and skills attained through completion of a recognized course of instruction, including, but not limited to, attorneys, physicians, registered nurses, engineers, architects, teachers, and the various types of physical, chemical, and biological scientists." The first sentence states the principle that "Professional employees shall not be denied the right to be represented separately from nonprofessional employees by a professional employee organization consisting of such professional employees." The middle sentence, the one that concerns us here, provides: "In the event of a dispute on the appropriateness of a unit of representation for professional employees, upon request of any of the parties, the dispute shall be submitted to the Division of Conciliation of the Department of Industrial Relations for mediation or for recommendation for resolving the dispute."[8] The position of the City and MEA was that the remedy provided by the

---

[8] "Mediation" is defined in the MMBA as "effort by an impartial third party to assist in reconciling a dispute regarding wages, hours and other terms and conditions of employment between representatives of the public agency and the recognized employee organization or recognized employee organizations through interpretation, suggestion and advice." (§ 3501, subd. (e).) This definition was obviously drafted with reference to section 3505.2, which authorizes mediation after the meet-and-confer requirement fails to produce agreement. "Mediation" has been interpreted to preclude a public agency and an employee organization to agree to fact-finding or binding arbitration. (See *Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22, 25-26 [132 Cal.Rptr. 668, 553 P.2d 1140] and authorities cited.)

middle sentence is jurisdictionally exclusive.[9] The trial court agreed and so do we.

Local 21 advances three reasons why the trial court erred. First, implicitly denying that section 3507.3 is exclusive, Local 21 argues that the City's ERO, and particularly section 16.210(b) (quoted at fn. 2, *ante*), "clearly meets the 'standard' for dispute resolutions, and satisfies the policies and purposes, of the MMBA." The second argument is based upon this italicized language of the middle sentence of section 3507.3: "In the event of a dispute on the appropriateness of a unit of representation for professional employees, *upon request of any of the parties*, the dispute shall be submitted to the Division of Conciliation of the Department of Industrial Relations for mediation or for recommendation for resolving the dispute." According to

---

[9]Apparently hoping to avoid a decision on the merits, Local 21 makes a pair of arguments that turn on waiver.

It first contends that the City waived any right to raise this argument after it proceeded through the administrative remedy using ERO section 16.210(b), quoted at fn. 2, *ante*. Regardless of whether the City has waived its right, the same certainly cannot be held of MEA, which not only did not participate in the administrative proceeding before the ALJ but was excluded when it did attempt to participate. MEA clearly had standing to involve itself on its members' behalf in the legal proceedings. (E.g., *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 283-284 [32 Cal.Rptr. 830, 384 P.2d 158].) Because the focus of this appeal is on those legal proceedings, there is no need to address MEA's claim that the ALJ's decision is void because it (MEA) was a necessary indispensable party that could not be excluded from the administrative proceedings.

Local 21 next argues that "section 3507.3 is inapplicable because that section only applies to disputes over the appropriateness of units for professional employees. This is a dispute over the appropriateness of a unit for management employees." The argument Local 21 now makes directly contradicts its earlier position; in its complaint that led to the administrative proceeding, Local 21, asserting it "represent[s] several classifications placed in 'management bargaining unit,' " insisted that "[t]he 'management' bargaining unit cuts across professional lines, thus violating the rights of professional employees to be represented separately." Certainly the ALJ thought as much, as evidenced by the decision taking half of the test case classes out of the management unit because "[p]rofessional employees have the right to be represented by a professional union regardless of their position in the hierarchy." (See fn. 3 and accompanying text, *ante*.) If we were inclined to find waiver against anyone, it would be against Local 21 in light of these facts.

Such a conclusion would be reinforced by examining an argument from MEA that Local 21 should be estopped from contesting the applicability of section 3507.3 in light of the following decision by a different ALJ in an earlier administrative proceeding initiated by Local 21: "Local 21 notes that the ERO and the MMBA guarantee professional employees the right to be represented in a unit separate from non-professional employees. (Government Code section 3507.3; *Alameda County Asst. Pub. Def. Assn. v. County of Alameda* [, *supra*,] 33 Cal.App.3d 825, 828.) By creating the management bargaining unit, it is alleged, the [City] foreclosed the opportunity for professional employees to seek representation for themselves. Even if true, the sole means of administrative review under the MMBA is through submission to the Division of Conciliation of the Department of Industrial Relations for mediation or for recommendation for resolving the dispute. (Government Code section 3507.3.) Local 21 has not exhausted this administrative remedy . . . ."

Local 21, the italicized language shows that "[t]his is an elective remedy, not a mandatory procedure. Thus, a party must first 'request' or invoke this procedure before it becomes operative." Finally, working from the language "a dispute over the appropriateness of a unit of representation for professional employees," Local 21 asserts section 3507.3 is inapplicable because it "only applies to disputes over the appropriateness of units for professional employees. This is a dispute over the appropriateness of a unit for management employees."

In construing section 3507.3, we are required to focus on all words of the statute and all parts of the statutory scheme that is the MMBA, not just a handful of words. (E.g., *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)

That the procedure of section 3507.3 is meant to be free of local variation can be discerned from the statutes on either side of section 3507.3. Section 3507.1 provides: "In the absence of local procedures for resolving disputes on the appropriateness of a unit of representation, upon the request of any of the parties, the dispute shall be submitted to the Division of Conciliation of the Department of Industrial Relations for mediation or for recommendation for resolving the dispute." Section 3507.5 provides in pertinent part: "In addition to those rules and regulations a public agency may adopt pursuant to and in the same manner as in Section 3507, any such agency may adopt reasonable rules and regulations providing for designation of the management and confidential employees of the public agency . . . ."

Two conclusions immediately suggest themselves. First, sections 3507.1 and 3507.3 have a large degree of overlap. Both deal with "dispute[s] on the appropriateness of a unit of representation." Both speak of mediation by the Division of Conciliation instigated at the "request of any of the parties." The second conclusion is the vastly different scope between the two statutes' ends and means. Section 3507.1 has general application, but section 3507.3 is specific, its scope limited to professional employees. The most pertinent difference is that section 3507.1 makes provision for "local procedures," but section 3507.3 does not. This difference in language evidences a difference in legislative intent. (E.g., *Peñasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1188-1189 [283 Cal.Rptr. 135, 812 P.2d 154]; *Cumero v. Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 596 [262 Cal.Rptr. 46, 778 P.2d 174].) The obvious, and indeed the only reasonable, interpretation of that differing intent is that the subject covered by section 3507.3 is

not subject to local regulation. As the City puts it in its brief: "Because section 3507.1 clearly authorizes local procedures, and section 3507.3 just as clearly does not, the latter section must be read as precluding alternative local remedies." If Local 21's argument prevailed, it is difficult to conceive what purpose section 3507.3 would serve. If local regulation were permitted, section 3507.3 would be nothing more than a particularized reiteration of section 3507.1.

A good deal of Local 21's second argument that the section 3507.3 mediation option is "an elective remedy, not a mandatory procedure" may be conceded without doing damage to the conclusion of exclusivity. Certainly mediation is elective and not mandatory. The mediation procedure is not self-starting; it must be requested by a party. But this does not mean that inconsistent local remedies may be substituted. This case illustrates the dangers of a contrary conclusion. The local remedy invoked here allows an ALJ to make a "final determination." (See fn. 2, *ante*.) Clearly, if such a determination has already been made, the idea of subsequent mediation would be pointless. That mediation is elective does not mean it cannot be exclusive.

Local 21's final argument has an undeniable plausibility. Looking at the entire list of 60 protested classes, and the 10 "test case" classes that went before the ALJ, it is easy to conceive of all the included employees simply as a management unit, not a unit of professionals. Among the 60 job classifications are numerous "administrators," "coordinators," "managers," "directors," "assistant directors," "superintendents," "supervisors," and "chiefs" of departments. On the other hand, those classifications are permeated with a number of groups that are just as easily seen as professional, such as engineers, accountant, radiologist, and other health-related positions. But the argument fundamentally rests upon construing the language "a dispute on the appropriateness of a unit of representation for professional employees" as meaning "a dispute on the appropriateness of a unit of representation for professional employees only." Local 21 reasons that because a number of nonprofessionals were included in the management unit, this was not really "a dispute on the appropriateness of a unit of representation for professional employees." This logic cannot be accepted because it directly contradicts the Legislature's command in section 3507.3 that "[p]rofessional employees shall not be denied the right to be represented separately from nonprofessional employees by a professional employee organization consisting of such professional employees." Entire groups of professionals were moved into a different bargaining unit by the City's action. The thrust of Local 21's argument is also contrary to the approach

Local 21 took on behalf of its member classes in commencing the administrative proceeding. (See fn. 9, *ante.*) Finally, it is at odds with our approach in *Alameda County Assistant Public Defenders Assn. v. County of Alameda, supra,* 33 Cal.App.3d 825, where we did not allow a group of professionals to be submerged in a very broadly defined bargaining unit. Here we have a number of classes concerned at their reassignment from "professional" to "management." This qualifies as "a dispute on the appropriateness of a unit of representation for professional employees" within the meaning of section 3507.3.

Section 3507.3 should not be construed in a manner that would make it surplusage or meaningless. (E.g., *Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333]; *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) Local 21's proposed construction would do so. The utility of the statute could be undercut by local procedures, even though section 3507.3 is conspicuous in not authorizing local regulation. Contrary to the rule of construction governing general and specific statutes on the same subject (e.g., *Woods v. Young* (1991) 53 Cal.3d 315, 325 [279 Cal.Rptr. 613, 807 P.2d 455]), Local 21's construction effectively subsumes section 3507.3 within the broader provisions of section 3507.1, thereby making section 3507.3 a hostage to local regulation.

Our conclusions are as follows: (1) The MMBA, in the form of section 3507.3, has set a standard for the manner in which "a dispute on the appropriateness of a unit of representation for professional employees" is to be resolved; (2) that standard cannot be varied by local rules or regulations and is jurisdictionally exclusive within its field; (3) the procedure for using an administrative law judge to decide "a dispute on the appropriateness of a unit of representation for professional employees" invaded that field; and (4) the administrative law judge's decision was therefore a nullity, and the trial court correctly refused to accord it any effect.[10]

In light of these conclusions, there is no need to address the other contentions raised by Local 21.

---

[10]We hasten to add that this conclusion has no pejorative connotations for the ALJ involved. We are not deciding the other arguments that she acted in excess of her jurisdiction with respect to the particulars of her decision. Even without an administrative record before us, we are virtually certain that neither the issue of section 3507.3 applicability nor the ruling on the section's applicability by the other ALJ (quoted at fn. 9, *ante*) was ever brought to her attention.

The judgment is affirmed.

Hanlon, P. J., and Reardon, J., concurred.