Filed 3/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PACIFICA FIREFIGHTERS ASSOCIATION,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CITY OF PACIFICA,<br><br>     Defendant and Respondent. | A161575<br><br>(San Mateo County<br>Super. Ct. No. 19CIV04212) |

In 1988, the voters in the City of Pacifica (City) approved Measure F, which prescribes procedures to be followed in the event of an impasse in labor disputes with the City's firefighters. Under this measure, absent other agreement, the top step salaries of fire captains in the city are to be set at an amount not less than the average for top step salaries of fire captains in five neighboring cities. After an impasse in negotiations occurred in 2019, the Pacifica Firefighters Association (PFFA) sought a writ of mandate and declaratory relief requiring the City to follow Measure F. The trial court denied the petition, finding Measure F preempted by state law and an unlawful delegation of power. We affirm.

## BACKGROUND

### *Measure F*

Measure F, an ordinance entitled "Firefighter Dispute Resolution Process Impasse Resolution Procedures: Minimum Wages and Benefits For Firefighters," was adopted by the City's voters in 1988. The stated purpose of

1

the ordinance is "to resolve an impasse in wage and benefit negotiations should they occur" between representatives of the City and of the recognized firefighter organization "and to thereafter adopt minimum salary and benefits for firefighters."

Pursuant to Measure F, if representatives of the City and/or the firefighters declare an impasse in negotiations over "wages, hours, benefits, and working conditions," the parties must, within five days, see the assistance of a mediator "selected by the division of Conciliation of the Department of Industrial Relations of the State of California." If no agreement has been reached after 15 days of mediation, either party may request the state conciliation service to name a panel of seven factfinders, from which one neutral factfinder is selected by the parties through an "alternate striking process"; that neutral factfinder joins one named by the City and one named by the firefighters to form a three-member factfinding board.

The "Factfinding Board" (Board) must "undertake an investigation, conduct hearings and receive evidence from City and firefighter representatives on all outstanding issues in dispute" and then make a recommendation on each disputed issue. Section 2(d) of Measure F provides: "The recommendations shall not be binding. On the issue of salaries and benefits, the recommendations of the Board shall be in conformity with the prevailing wage criteria established in Section 3 of this ordinance." After a 15-day period during which the parties must resume negotiations, the Board's findings and recommendations on any issues remaining in dispute "shall be submitted to the City Council for its consideration and implementation."

Section 2(e) of Measure F provides: "The City Council shall carefully consider all the recommendations of the Factfinding Board. It is the intention of this ordinance that the recommendations of the Factfinding Board should be adopted by the City Council unless said recommendations are not supported by the findings of the Board or the findings are not supported by the preponderance of evidence received by the Board. In the event the City Council does not adopt the recommendations of the Factfinding Board on any issue, the City Council shall then make its own written findings on such issues. Such findings must be supported by the preponderance of evidence received by the Factfinding Board. On the subject of wages and benefits, the City Council shall follow and apply the prevailing wage and benefit criteria set forth in Sections 3(a) and 3(b) of this ordinance."

Pursuant to section 3(a) of Measure F, "Unless otherwise agreed by City and firefighter representatives following the adoption of this ordinance, the top step salaries of Fire Captains in the City of Pacifica shall be fixed retroactively to July 1 of each fiscal year at an amount which is not less than the average for top step salaries for Fire Captains in the Cities of South San Francisco, Daly City, San Mateo, San Bruno and Redwood City. Salaries for top step Firefighter-Engineers shall be adjusted to a rate of 15.3% below the salary for top step Fire Captains. The percentage rated step increases below the top step Fire Captain and the top step Firefighter-Engineer shall be increased proportionately to the increases in the top steps for said classifications."

Section 3(b) of Measure F states that employer costs for medical insurance for fire captains, firefighter-engineers and their dependents, and employer costs for vacations, holidays, educational incentives, sick leave, non-safety related uniform costs and retirement benefits, "shall be totaled and

3

divided by the number of actual employees in the represented unit.  Said costs shall then be compared to and maintained at not less than the employer costs and employer incurred costs of such benefits for Firefighters, Fire Engineers and Fire Captains actually employed in the cities identified in Section 3(a) of this ordinance.  It is the intention of this ordinance that, unless otherwise agreed by City and firefighter representatives, that the City Council should follow the recommendations of the Factfinding Board in allocating the costs prescribed by this subsection unless said findings are not supported by a preponderance of the evidence received by the Board."

***Meyers-Milias-Brown Act***

"In general, labor relations between local government employers and employees are regulated by the Meyers-Milias-Brown Act (MMBA), Government Code section 3500 et seq." (*Service Employees Internat. Union v. Superior Court* (2001) 89 Cal.App.4th 1390, 1394.)  "[T]he MMBA has two purposes:  (1) to promote full communication between public employers and employees; (2) to improve personnel management and employer-employee relations within the various public agencies.  Those purposes are to be achieved by establishing methods for resolving disputes over employment conditions and for recognizing the right of public employees to organize and be represented by employee organizations.  Section 3500 states, however: 'Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee

relations. . . .' " (*Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 62; Gov. Code, § 3500.)[1]

The MMBA requires a public employer to meet and confer in good faith with the recognized employee organization on wages, hours, and other terms and conditions of employment (§ 3505), and provides procedures to be followed if the parties fail to reach agreement. The parties may "together" agree upon the appointment of a mediator mutually agreeable to both. (§ 3505.2.) If there is no mediation, or if mediation is not successful, the employee organization may request submission of the parties' differences to a "factfinding panel" comprised of three members, one selected by each of the parties and a third selected by the Public Employment Relations Board. (§ 3505.4, subd. (a).) The factfinding panel must meet with the parties and "may make inquiries and investigations, hold hearings, and take any other steps it deems appropriate." (§ 3505.4, subd. (c).)

The panel is required to "consider, weigh, and be guided by" eight enumerated criteria: (1) "State and federal laws that are applicable to the employer"; (2) "Local rules, regulations, or ordinances"; (3) "Stipulations of the parties"; (4) "The interests and welfare of the public and the financial ability of the public agency"; (5) "Comparison of the wages, hours, and conditions of employment of the employees involved in the factfinding proceeding with the wages, hours, and conditions of employment of other employees performing similar services in comparable public agencies" (6) "The consumer price index for goods and services, commonly known as the cost of living"; (7) "The overall compensation presently received by the employees, including direct wage compensation, vacations, holidays, and

---

[1] Further statutory references are to the Government Code unless otherwise indicated.

5

other excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received"; and (8) "Any other facts . . . which are normally or traditionally taken into consideration in making the findings and recommendations." (§ 3505.4, subd. (d).)

The panel must "make findings of fact and recommend terms of settlement," which must be submitted in writing to the parties and, subsequent to their receipt, made available to the public." (§ 3505.5, subd. (a).) The panel's findings and recommendations "shall be advisory only." (*Ibid.*) As relevant here, "[a]fter any applicable mediation and factfinding procedures have been exhausted," the public employer "may, after holding a public hearing regarding the impasse, implement its last, best, and final offer." (§ 3505.7.)

### *This Case*

According to the parties' stipulated facts, the City (as of January 2020) employed six fire captains and 12 firefighters, including three vacant firefighter positions expected to be filled beginning January 27, 2020. In October 2018, the parties began negotiations for a new contract to replace the "Memorandum of Understanding" that was to expire at the end of that year. The City initially offered a two percent salary increase per year for three years, for all PFFA bargaining unit members. On February 15, 2019, the City increased its offer to a four percent salary increase in the first year (adding a two percent " 'market equity adjustment' " to the originally offered two percent salary increase in the first year), followed by two percent increases in the second and third years. On March 6, 2019, PFFA declared an impasse and its intent to invoke Measure F procedures if an agreement could not be reached in mediation. The City "stated that it would follow the

Measure F procedures only to the point where they diverged from the requirements of the [MMBA]." Mediation was unsuccessful and, on April 24, 2019, PFFA stated "it would like to proceed to factfinding pursuant to Measure F and, absent a change in the City's position, PFFA would file a Petition for Writ of Mandate and Complaint for Injunctive and Declaratory Relief."

The procedures and standards in Measure F have never previously been applied to set firefighters' compensation in Pacifica. As of May 2019, "[w]ithout adjustments for health care benefits and other elements of total compensation, the top step salaries for Fire Captains and Firefighters in the City of Pacifica . . . were "approximately 18.15% and 21.8% less respectively than the average for top step salaries for Fire Captains and Firefighters in the cities of South San Francisco, Daly City, San Mateo, San Bruno, and Redwood City." If firefighter salaries in Pacifica had been set pursuant to Measure F in fiscal year 2019, without adjustments for health care payments, the city council would have had to increase salaries for top step fire captains by approximately 18.15 percent and top step firefighters by 21.8 percent.

PFFA filed its amended verified first amended petition for writ of mandate (Code Civ. Proc., § 1085) and complaint for declaratory and injunctive relief (Code Civ. Proc., § 1060) on September 4, 2019, seeking "to enforce the plain language of Measure F as the parties' legally binding and non-discretionary vehicle for factfinding and resolving the current impasse in wage and benefit negotiations." The City answered and, after receiving briefs from the parties, the trial court issued a tentative ruling denying the petition. The court concluded Measure F is preempted by the MMBA and constitutes an unlawful delegation of power. As to the former, the court found two provisions of Measure F conflict with the MMBA. First, the mandate of

7

section 3 of Measure F that, absent agreement otherwise, salaries must be fixed at an amount not less than the average in the other jurisdictions, conflicts with the MMBA's authorization for public agencies to unilaterally impose their last, best, and final offer if negotiations fail. Second, Measure F's requirement that the factfinding board's recommendation be in conformity with the prevailing wage criteria in section 3 of the ordinance conflicts with the MMBA's requirement that the factfinding board weigh specified factors, including the interests and welfare of the public and financial ability of the public agency when developing any recommendation. (§ 3505.4, subd. (d)(4).) The court found Measure F "constitutes an unlawful delegation of power by the electorate" because, since Pacifica is a general law city, the city council has exclusive authority to fix compensation for appointive officers and employees (§ 36506) and a local initiative usurping this authority is unenforceable. After a hearing on September 10, 2020, the court adopted its tentative ruling as the order of the court. Its order denying the petition was filed on October 9, 2020.

This appeal followed.

## DISCUSSION

"A traditional mandamus is sought to enforce a nondiscretionary duty to act on the part of a court, an administrative agency, or officers of a corporate or administrative agency." (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618.) "There are two requirements essential to issuance of a writ of mandate under Code of Civil Procedure section 1085: (1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty." (*Ibid.*)

8

"Where, as here, the pertinent facts are undisputed and the issue of the City's mandatory duty under the ordinance presents an issue of statutory interpretation, 'the question is one of law and we engage in a de novo review of the trial court's determination.' (*Marshall v. Pasadena Unified School Dist.* [(2004)] 119 Cal.App.4th 1241, 1253; see also *Shamsian v. Department of Conservation* [(2006)] 136 Cal.App.4th 621, 631.) ' " 'As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation. [Citations.]' [Citation.]" [Citations.]' (*Cummings v. Stanley* [(2009)] 177 Cal.App.4th 493, 508.)" (*Sacks v. City of Oakland* (2010) 190 Cal.App.4th 1070, 1082.)

## I.

PFFA contends the present case is controlled by *Kugler v. Yocum* (1968) 69 Cal.2d 371 (*Kugler*), which held that a proposed ordinance requiring salaries of firefighters in the City of Alhambra to be set at no less than the average of the salaries received by firefighters in the neighboring City of Los Angeles and County of Los Angeles did not unlawfully delegate the Alhambra City Council's legislative power to the parties who establish salaries for firefighters in the neighboring jurisdictions. (*Id.* at pp. 373–374.)

*Kugler* began its discussion with the observation that "the subject matter of the proposed ordinance, that is the salaries of city firemen, falls within the electorate's initiative power. The city charter provides that the 'Council . . . shall have the power to . . . establish . . . the amount of [the fire division's] . . . salaries' (§ 81) and that the 'electors . . . shall have the right to . . . adopt . . . any ordinance which the council might enact' (§ 176). Since in dealing with wage rates, the city council acts in its 'legislative' rather than its 'administrative' capacity [citations], wage rates are a proper subject for adoption as an ordinance by a city council and, accordingly, pursuant to

9

section 176, for enactment by an initiative." (*Kugler, supra,* 69 Cal.2d at p. 374.)

*Kugler* then explained that "the purpose of the doctrine that legislative power cannot be delegated is to assure that 'truly fundamental issues [will] be resolved by the Legislature' and that a 'grant of authority [is] . . . accompanied by safeguards adequate to prevent its abuse.' " (*Kugler, supra,* 69 Cal.2d at p. 376.) While a legislative body must itself perform these functions, it " 'may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the "power to fill up the details" by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect . . . .' " (*Ibid.*)

Applying these principles, *Kugler* concluded: "[T]he adoption of the proposed ordinance, either through promulgation by the Alhambra City Council or by initiative, will constitute the legislative body's resolution of the 'fundamental issue.' Once the legislative body has determined the issue of policy, i.e., that the Alhambra wages for firemen should be on a parity with Los Angeles, that body has resolved the 'fundamental issue'; the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation. Thus the decision on the legislative policy has not been delegated; the implementation of the policy by reference to Los Angeles salaries is not the delegation of it." (*Kugler, supra,* 69 Cal.2d at p. 377.)

PFFA views the situation in the present case as directly analogous, urging that under Measure F, after firefighter salaries are determined by the Board, the City "retains full discretionary power in determining whether the data and the Board findings are sound and how, exactly, the City will execute

10

its own previously determined policy of achieving pay parity for the City's firefighters." There are at least two problems with this view.

First, PFFA's emphasis on the discretion Measure F leaves to the city council ignores the fact that the ordinance dictates the minimum level at which firefighters' compensation ultimately must be fixed. Measure F permits the city council to reject the factfinding board's recommendations if it finds they are not supported by the evidence, and to make its own findings based on the evidence before the board. But Measure F leaves the city council no discretion as to the standard that must be followed in fixing firefighters' compensation: Section 3 of Measure F *requires* compensation *no less than* that of firefighters in the comparison jurisdictions.

Second, PFFA attempts to elide any distinction between the electorate and the city council by referring to the City's "own previously determined policy" of setting firefighters' compensation at no less than that of firefighters in the comparison cities. Treating the voters' policy decision as in effect a policy decision by the city council, PFFA views *Kugler* as controlling because "the City"—whether voters or city council—established the fundamental standards to be applied in determining compensation. But in assuming the validity of the voter-adopted measure, PFFA's argument glosses over the fact that *Kugler* involved a charter city whose charter expressly gave the voters the right to adopt any legislation the city council could enact, while Pacifica is a general law city. Contrary to PFFA's argument, this distinction is significant.

"Charter cities are specifically authorized by our state Constitution to govern themselves, free of state legislative intrusion, as to those matters deemed municipal affairs." (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 555.) " ' "[S]alaries of local

11

employees of a charter city constitute municipal affairs and are not subject to general laws." ' " (*Id.* at p. 564; *Marquez v. City of Long Beach* (2019) 32 Cal.App.5th 552, 567.)

By contrast, "[t]he powers of a general law city include ' "only those powers expressly conferred upon it by the Legislature, together with such powers as are 'necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation.' The powers of such a city are strictly construed, so that 'any fair, reasonable doubt concerning the exercise of a power is resolved against the corporation.' [Citation.]" [Citations.]' (*Martin v. Superior Court* (1991) 234 Cal.App.3d 1765, 1768.)" (*G.L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1092.)

" '[T]he local electorate's right to initiative and referendum is guaranteed by the California Constitution, article II, section 11, and is generally co-extensive with the legislative power of the local governing body. [Citation.] . . . "[W]e will presume, absent a clear showing of the Legislature's intent to the contrary, that legislative decisions of a city council or board of supervisors . . . are subject to initiative and referendum." ' (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775, fn. omitted (hereafter *DeVita*).)" "The presumption in favor of the right of initiative is rebuttable upon a clear showing that the Legislature intended 'to delegate the exercise of . . . authority exclusively to the governing body, thereby precluding initiative and referendum. [Citation.]' (*DeVita,* . . . at p. 776.)" (*Totten v. Board of Supervisors* (2006) 139 Cal.App.4th 826, 833–834.)

"In ascertaining whether the Legislature intended to delegate authority exclusively to the local governing body, the 'paramount factors' are '(1) statutory language, with reference to "legislative body" or "governing body"

12

deserving of a weak inference that the Legislature intended to restrict the initiative and referendum power, and reference to "city council" and/or "board of supervisors" deserving of a stronger one [citation]; (2) the question whether the subject at issue was a matter of "statewide concern" or a "municipal affair," with the former indicating a greater probability of intent to bar initiative and referendum [citation].' (*DeVita, supra,* 9 Cal.4th at p. 776.)" (*Totten, supra,* 139 Cal.App.4th at p. 834.) "Any other indications of legislative intent" are also to be considered. (*DeVita,* at p. 776.) These interpretive factors are not meant to be "a set of fixed rules for mechanically construing legislative intent," and " ' " '[i]f doubts can [be] reasonably resolved in favor of the use of [the] reserve initiative power, courts will preserve it.' " ' " [Citations.]" (*Id.* at p. 777.)

As a general law city, Pacifica is subject to section 36506, which provides, "By resolution or ordinance, the *city council* shall fix the compensation of all appointive officers and employees." (§ 36506, italics added.) Although not conclusive, the statute's use of the specific term "city council" (rather than a more generic reference such as "legislative body" or "governing body") supports a "strong inference" that the Legislature meant to exclude the electorate from the authority conferred by section 36506. (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501–505; *Totten, supra,* 139 Cal.App.4th at p. 835.)

The City maintains that the California Supreme Court, in *Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22 (*Bagley*), has "already held" section 36506 "bars the voters of a general law city from delegating the city council's exclusive authority to fix employee compensation." *Bagley* held invalid an initiative that would have required unresolved disputes between the city and the recognized firefighters' employee organization to be

13

submitted to binding arbitration.  The court explained that "[w]hen the Legislature has made clear its intent that one public body or official is to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization.  [Citations].  [¶] Although standards might be established governing the fixing of compensation and the city council might delegate functions relating to the application of those standards, the ultimate act of applying the standards and of fixing compensation is legislative in character, invoking the discretion of the council." (*Bagley*, at pp. 24–25.)  The court further noted that provisions of the MMBA, which indicated "ultimate determinations" regarding resolution of disputes between public employers and public employee organizations are to be made by the governing body itself," "confirm[ed]" that "the plain language" of section 36506 should be applied "literally." (*Bagley*, at p. 25.)

PFFA attempts to distinguish *Bagley* on the basis that it involved delegation of the city council's authority over employee compensation to an arbitrator, whose binding decision would fix the salaries at issue, whereas Measure F reflects a legislative policy adopted by the City's electorate, with only implementation left to others, as in *Kugler*.  This distinction, as we have said, ignores the fact that *Kugler* involved an exercise of initiative power that was expressly granted by the city's charter while Pacifica is a general law city subject to section 36506.  Indeed*, Bagley* specifically noted this point in distinguishing *Kugler,* stating *Kugler* "involved the sufficiency of standards necessary to a valid delegation of legislative power *in the absence of statutes demonstrating an intent that the power be exercised by a specific legislative body*.  Here legislative intent limiting delegability is clear." (*Bagley, supra,* 18 Cal.3d at p. 26, italics added.)  PFFA's focus on the fact that the impasse

14

resolution measure at issue in *Bagley* was binding arbitration begs the essential question, which is whether section 36506 delegated authority to set municipal employees' compensation exclusively to the city council so as to preclude legislation on the matter by initiative.

The strong inference of exclusive delegation arising from section 36506's specific reference to the "city council" is all the stronger when section 36506 is compared to other statutes in the same division of title 4 of the Government Code ("Government of Cities"). Section 36516 authorizes the city council to enact an ordinance providing that each city council member shall receive a salary based on the city's population, in amounts specified by the statute (§ 36516, subd. (a)(1)), but further provides that "the question of whether city council members shall receive a salary for services, and the amount of that salary, may be submitted to the electors" and determined by the electors' majority vote, including being "increased beyond" or "decreased below" the statutory amount. (§ 36516, subd. (b).) Section 36516.1 provides that an elective mayor[2] "may be provided with compensation in addition to that which he or she receives as a council member," which "additional compensation may be provided by an ordinance adopted by the city council or by a majority vote of the electors voting on the proposition at a municipal election." The fact that other statutes regarding salaries paid by general law cities make explicit provision for issues to be submitted to the voters, while section 36506 does not, reinforces the inference that the Legislature intended

_____

[2] Pursuant to section 36801, the city council of a general law city elects one of its members to be mayor. The city council may, however, submit to the voters the question whether the electors shall thereafter elect a mayor, and after an elective mayor's office has been established, the city council may submit to the voters the question whether to eliminate such office and reestablish the statutory procedure. (§§ 34900, 34902.)

only the city council, and not the voters, to determine the salaries of city employees.

The inference of exclusive delegation to the city council is also supported by consideration of the effect on city operations if the voters could require a minimum level of compensation for specific city employees. In attempting to divine the Legislature's intent, some courts have inferred exclusive delegation "in part on the grounds that the Legislature must have intended to prevent disruption of routine operations of government." (*DaVita, supra,* 9 Cal.4th at p. 781.) Based on fiscal year 2019 figures, and without considering health care payments, Measure F would have required the City to increase salaries for top step fire captains by approximately 18.15 percent and for top step firefighters by 21.8 percent. These increases are far greater than the two percent and four percent salary increases in the City's last offer before the impasse in negotiations with PFFA. This difference could significantly impact the City's ability to meet other financial obligations and satisfy other priorities.

As has been explained with reference to a county's responsibilities in establishing a budget, "[t]he exercise of the board's legislative power in budgetary matters 'entails a complex balancing of public needs in many and varied areas with the finite financial resources available for distribution among those demands. . . . [I]t is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available.' (*County of Butte v. Superior Court* (1985) 176 Cal.App.3d 693, 699.) In so doing, the board must weigh 'a number of other factors besides the level of the union members' salaries.' (*California Teachers Assn. v. Ingwerson* (1996) 46 Cal.App.4th 860, 876.)" (*County of Sonoma v. Superior Court* (2009) 173 Cal.App.4th 322, 343.) The process by

16

which it is determined how the resources are to be allocated cannot be controlled by the courts or by one particular group such as a union which has an interest in how much of those resources are allocated to its members. (*County of Butte*, at p. 698.) And, as the court put it in *County of Butte,* "[t]he chaos that would result if each agency of government were allowed to dictate to the legislative body the amount of money that should be appropriated to that agency, or its staffing and salary levels, is readily apparent." (*Id.* at p. 699.) The complex balancing necessary to a city's financial decisionmaking "involves interdependent political, social and economic judgments which cannot be left to individual officers acting in isolation; rather, it is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available." (*Ibid.*)

Measure F addresses the compensation of employees in a single city department; the voters sought to ensure that if negotiations failed, firefighters in Pacifica would receive compensation commensurate with that of firefighters in neighboring cities. Laudable as their purpose may have been, the voters were considering one part of a complicated puzzle in isolation. Voters do not have access to the detailed financial information necessary to see the puzzle as a whole and weigh competing demands on a finite city treasury. In specifically directing the "city council" to "fix the compensation of all appointive officers and employees" (§ 36506), the Legislature must have intended to avoid the disruption to city operations that could result if the electorate could require a general law city to pay its firefighters higher salaries than the city council deemed appropriate by requiring salaries no less than those in another jurisdiction.

17

We therefore agree with the trial court that Measure F is unenforceable as a usurpation of authority the Legislature granted exclusively to the city council.[3]

## II.

As PFFA emphasizes, there is language in the MMBA indicating the legislation is not intended to preempt all local legislation: Section 3500 states: "Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies that establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies that provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other

---

[3] PFFA suggests that if the City "had a problem" with Measure F when it was adopted in 1988, it should have challenged the ordinance then. Its purpose in making this point is not entirely clear, as it does not go so far as to argue the present challenge cannot be maintained. The authority PFFA cites is a footnote in *Kugler* it describes as explaining that if a city dislikes a voter-approved ordinance, the remedy lies in a frontal attack on the ordinance or a formal action to narrow the electorate's initiative power. (*Kugler, supra,* 89 Cal.2d at p. 375, fn. 2.) In fact, the court's remarks addressed challenges to rules established by the city's charter, not to the proposed ordinance pertaining to initiatives and their repeal. Responding to an argument that the proposed ordinance was invalid because the city council would never be able to repeal an ordinance approved by the voters, the court stated that if the rule prohibiting the city council from undoing an initiative-enacted ordinance was deemed unwise, the remedy would be either to change that rule or to amend the charter to narrow the electorate's initiative power. (*Ibid.*) In any event, the cited footnote says nothing about any limitation on when an initiative-enacted ordinance may be challenged as an unlawful delegation of legislative power.

methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

The parties agree, however, that " '[t]he MMBA deals with a matter of statewide concern, and its standards may not be undercut by contradictory rules or procedures that would frustrate its purposes. [Citations.] Local regulation is permitted only if "consistent with the purposes of the MMBA." [Citation.]' " (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 925, quoting *International Federation of Prof. & Technical Engineers v. City and County of San Francisco* (2000) 79 Cal.App.4th 1300, 1306; *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781 ["It is indisputable that the procedures set forth in the MMBA are a matter of statewide concern, and are preemptive of contradictory local labor-management procedures"].)"[4]

PFFA contends "[t]here is nothing in Measure F that would undercut or frustrate the purposes of the MMBA." The City, by contrast, maintains Measure F "irreconcilably conflicts with the MMBA in at least two ways." The first is Measure F's requirement that the city council set firefighters' top

---

[4] "The MMBA was not intended to occupy the field and preempt local regulation. 'Nothing contained herein shall be deemed to supersede the . . . rules of local public agencies which establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations' (§ 3500). Looking to the future, the MMBA authorizes public agencies to adopt 'reasonable rules and regulations' on specified subjects after meeting and conferring with employee organizations. (§ 3507.) One of those subjects is 'additional procedures for the resolution of disputes involving wages, hours and other terms and conditions of employment' (*id.*, subd. (e))." (*International Federation of Prof. & Technical Engineers v. City and County of San Francisco, supra,* 79 Cal.App.4th at p. 1305.)

step salaries at an amount "not less than the average" for top step salaries in the specified cities, and maintain benefits costs at "not less than" the employer costs of such benefits in the comparison cities. This, the City argues, eliminates the city council's "statutory authority to unilaterally impose its last, best, and final offer" if negotiations are not successful. The second conflict the City cites is that Measure F does not require the factfinding board to weigh the factors required to be considered and weighed by the factfinding panel under the MMBA, including the interests and welfare of the public and the financial ability of the public agency, instead requiring only that the board's findings comport with the "not less than" standard.

With respect to the first point, in PFFA's view, the last, best, and final offer provision of the MMBA is not the exclusive final step if an impasse cannot be reached, and Measure F simply provides an alternative final step that is consistent with the purposes of the MMBA—an "other method[] of administering employer-employee relations" within the meaning of section 3500.[5]

PFFA's argument, of course, requires adopting the view we have rejected—that Measure F is the result of a valid exercise of the initiative power and, therefore, tantamount to a decision by the city council that the

---

[5] As PFFA puts it, while public entities "are invariably loathe to give up or compromise on their presumably sacrosanct right to impose a 'last, best, and final' offer when the going gets tough and impasse is reached," "that labor relations practice is not a labor relations necessity." PFFA argues that Measure F "reflects the electorate's desire that its firefighters receive pay that matches nearby comparator cities" and is "simply an 'other method' of administering employer-employee relations and overcoming impasse," an "impasse tool consistent with the MMBA's goal of improving employer-employee relations in California."

20

final outcome after an impasse in negotiations will be implementation of the not-less-than standard.

Had the city council itself enacted the provisions of Measure F, the question whether it conflicts with the MMBA would turn on whether last, best, and final offer provision in section 3055.7 precludes a public employer from adopting a different, binding final step in the impasse resolution process. While the MMBA does not *require* a public employer to impose its last, best, and final offer if impasse resolution procedures do not succeed, its authorization for the employer to do so serves to preserve the employer's discretion to determine the ultimate outcome (consistent with the employer's final position in negotiations). Measure F's requirement that compensation be set no lower than compensation in the comparison cities clearly conflicts with this retained control—unless it can be said that, as in *Kugler,* the enactment of Measure F constituted the necessary exercise of discretion. As previously discussed, *Kugler* viewed the ordinance requiring Alhambra's firefighters' compensation to be set at no less than that of Los Angeles firefighters as reflecting the city's exercise of discretion, through charter-authorized legislation by initiative, to adopt the comparison-based standard. That cannot be said here, where the standard was set for the City by an electorate that did *not* have authority to make the discretionary decision reserved for the city council.

Moreover, *Kugler* did not involve any question of conflict with the MMBA—which had not yet been enacted[6]—and its approval of the ordinance does not necessarily suggest Measure F presents no such conflict.

---

[6] The MMBA was enacted in 1968, building upon the initial recognition of public employee bargaining in the 1961 Brown Act.

21

When Measure F was adopted in 1988, the MMBA did not contain mandatory impasse procedures; the legislation "contemplate[d] resolution of impasse by procedures that are imposed by other laws or by mutual agreement, not by the MMBA." (*Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1034; § 3505 [meet and confer process "should include adequate time for the resolution of impasses where specific procedures for such resolution are contained in local rule, regulation, or ordinance, or when such procedures are utilized by mutual consent"].) Prior to the addition of the factfinding and impasse procedures now found in sections 3505.4, 3505.5, and 3505.7 by Assembly Bill No. 646 in 2011, "if a public agency and a union reached an impasse in their negotiations, the Act permitted the parties to mutually agree to engage in mediation (§ 3505.2), but did not require the parties to engage in factfinding or any other impasse procedure. [Citations.] If there was no impasse procedure applicable by local law or by the parties' agreement, the public agency could unilaterally impose its last, best, and final offer." (*San Diego Housing Com. v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 1, 9; *Santa Clara County Correctional Peace Officers' Assn., Inc.,* at p. 1034.) "With Assembly Bill [No.] 646's passage, if a public agency and a union reach an impasse in their negotiations, the union may now require the public agency to participate in one type of impasse procedure—submission of the parties' differences to a factfinding panel for advisory findings and recommendations—before the public agency may unilaterally impose its last, best, and final offer." (*San Diego Housing Com.*, at p. 9.)

In light of this history, had Measure F been enacted by the city council, it might have been valid when adopted in 1988. But, if so, the situation has now changed: Measure F precludes the city council from exercising its right

22

under section 3505.7 to impose its last, best, and final offer in the event of an impasse in negotiations.

The other conflict the City cites is between Measure F's requirement that the recommendations of the Board conform to the "prevailing wage criteria" established in section 3 of the ordinance and the MMBA's requirement that the factfinding panel consider and weigh a variety of enumerated factors. As PFFA does not address this issue in its briefs on appeal, we need not resolve it, although we note it again depends on PFFA's mistaken view that the voters could make this discretionary decision in place of the city council.

## DISPOSITION

The judgment is affirmed.

Costs to the City of Pacifica.

_____
Kline, J.*

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

*Pacifica Firefighters Association v. City of Pacifica* (A161575)

     *Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: San Mateo County Superior Court

Trial Judge: Hon. George Miram

Attorneys for Appellant: Goyette & Associates
Richard P. Fisher

Attorneys for Respondent: Burke, Williams & Sorensen
Nicholas J. Muscolino
Michelle Marchetta Kenyon
Deepa Sharma